ANDREW TOKHEIM, Appellant, v. A. D. MILLER, Appellee.

**BROKERS: Presumption as to Who Is Entitled to Compensation.** An owner of property who contracts with several competing brokers to the effect that he will pay a commission "for a purchaser" is *presumptively* liable to that broker who first procures the consent of the purchaser to enter into a contract on terms satisfactory to the owner. So held where two competing brokers had been negotiating with the same person as a purchaser.

**TRIAL: Instructions—Employing Figures of Speech.** It is not necessarily erroneous for the court, in order to illustrate a proposition

of law, to embellish his instructions with unusual figures of speech, in the form of parables.

*Appeal from Humboldt District Court.*—D. F. COYLE, Judge.

SEPTEMBER 19, 1922.

ACTION at law, for a commission for the sale of real estate, at an agreed price of $2.00 per acre. The answer was a general denial. The verdict was for the defendant, and the plaintiff appeals.—*Affirmed.*

*Garfield & Garfield,* for appellant.

*Lovrien & Lovrien,* for appellee.

EVANS, J.—I. The plaintiff was engaged in the real estate business. The defendant, Dr. Miller, was the owner of a quarter section of land, which he put upon the market in the fall of

1. BROKERS: presumption as to who is entitled to compensation.

1919 at $325 per acre, and listed with four real estate agencies, at $2.00 per acre commission to the successful agent. The plaintiff was one of such agents. Ben Jacobson was another. Each of them devoted considerable time and effort in attempting to procure a satisfactory purchaser. No terms of sale were specified by the seller, except the price thereof. Prior to March 26th, no purchaser had been procured by any of the agents. On March 27th, the land was actually sold to one Hanna. The one disputed question in the case upon the trial was, Which agent was the efficient procuring cause of the sale to Hanna? Hanna was not a stranger either to the seller or to the agents. He had formerly owned part of the land, and lived near thereto. For some time prior to the purchase, he had in contemplation the renting of it, and doubtless also the possible purchase of it. Tokheim had solicited him a number of times to make the purchase, but he had never assented thereto. He had been the subject of conversation between Tokheim and the defendant, as a prospective purchaser. Tokheim first solicited him in February, 1920. He had at that time declined to consider any purchase until after March 1st, on which date he was to have a settlement on a farm

sale made by himself. This settlement, if carried through, would result in leaving on his hands a third mortgage for a part of his purchase money, which mortgage would amount to something over $15,000. He was desirous of negotiating this mortgage as a part of any trade he might make in the purchase of another farm. According to Tokheim's testimony, he disclosed this fact to Dr. Miller. He was unable, however, to state the amount of the mortgage or any facts with reference thereto which would enable Miller to decide whether he would accept the mortgage in such a trade or not. Miller, as a witness, denies that Tokheim had ever mentioned the mortgage to him. No apparent progress was made with Hanna as a proposed purchaser, prior to March 26th. On that day, Jacobson, having posted himself as to the amount and character of the third mortgage held by Hanna, had procured the consent of Miller to accept the same as a part of the selling price of the land, in the event that Hanna would buy. This occurred in the town of Humboldt. Hanna was a resident of another town. Having obtained this concession from Miller, Jacobson, at 1 P. M., phoned to Hanna, advising him that he could give him a "good deal," and asking him to appear at Humboldt the next day, for the purpose of making a purchase. On the same day, Tokheim visited Miller, and advised him of his belief that he could make a sale to Hanna. Miller advised him to bring in his purchaser "tomorrow." Tokheim, in reply, said that he himself would not be able to come to Humboldt on the following day, but would, if possible, send his customer there. He also phoned to Hanna, between 2 and 3 P. M., requesting him to be at Humboldt on the following day. Hanna came on the following day, and went to the office of Dr. Miller, but did not find Miller there. He thereupon left. Later, he met Jacobson, who at once undertook to induce him to make the purchase. At Jacobson's request, Hanna went with him to the office of Dr. Miller, and a sale of the farm was accomplished then and there, at the price of $325.

Though, under the pleadings, the issue was made by a general denial of the plaintiff's petition, yet, under the evidence, the only issue made was: To which agent was Miller liable for the commission? Miller, as a witness, did not deny his liability to one agent or the other. In that respect, his position was the

same as though he had impleaded the two defendants, and paid his money into court. Neither agent claimed an exclusive agency. Each understood that the land was listed with other agents than himself. Each, accordingly, understood that he must work in competition with the other agents, and that he would not be entitled to a commission unless he became the final procuring cause of the sale to a purchaser. Upon this state of the undisputed facts, the trial court held, in substance, and so instructed, that the defendant was presumptively liable to Jacobson, and that the burden was upon the plaintiff to prove, by a preponderance of the evidence, that he himself, and not Jacobson, was the procuring cause of the sale. The court also instructed:

"So the only question for you to decide in this case is whether the plaintiff was the efficient and procuring cause of this sale, or whether Ben Jacobson was the efficient and procuring cause of the sale. If you find that the plaintiff has shown, by the preponderance of the evidence, that he himself was the procuring cause of the sale, your verdict should be for him; but if you find that he has failed to prove that he is the procuring cause of the sale, your verdict should be for the defendant."

These instructions in this form constitute the substantial and principal ground of complaint by the appellant. It is particularly argued that there was no burden upon the plaintiff to overcome by a preponderance of the evidence the conflicting claims of Jacobson. Inasmuch as, under the undisputed facts, Miller could be liable for only one commission, it would necessarily follow that, if plaintiff was entitled to it, Jacobson was not; and vice versa. In the instructions as given, the trial court drew the attention of the jury to the very point at issue. The jury could not intelligently find that one agent was entitled to the commission without also finding that the other was not. Inasmuch as Hanna had never, prior to the time of his appearance in Miller's office in company with Jacobson, consented to become a purchaser of the land, there never had been any liability on the part of Miller to any agent, up to that moment. At that moment, Tokheim was far away. His only claim is that he had requested Hanna on the previous day to go to Miller's office to negotiate with him; but Jacobson had done the same thing,

and had made his request to Hanna one or two hours previous to that made by Tokheim. The connection of Jacobson with the final procurement of the customer was visible, and necessarily known to Miller. We see, therefore, no escape from the proposition that Miller was presumptively liable to Jacobson, rather than to Tokheim. If, back of the final transaction in Miller's office, there were peculiar facts or circumstances, as between Jacobson and Tokheim, which would give Tokheim priority of right over Jacobson, the burden of proving them would necessarily be upon Tokheim. Granting that Tokheim first solicited Hanna as a purchaser (and even that is in dispute), that fact did not give to Tokheim a lien or a proprietary interest in Hanna as a customer, although such is the assumption that often obtains in the minds of agents. Granting that Tokheim was influential and instrumental in directing the mind of Hanna to the purchase and in holding it there, this of itself entitled him to nothing. This could have been true as to all of the agents. It was a part of their competition. The rule remains that the winning agent must be the one who first procures the consent of the purchaser to enter into a contract on terms satisfactory to the seller. We find less trouble in sustaining the holding of the court that Miller was presumptively liable to Jacobson than we would have found in sustaining a verdict for the plaintiff, if one had been rendered. Taking the view of the evidence most favorable to the plaintiff, the most that can be said for it is that it tended to show that the plaintiff first solicited Hanna, and that he solicited him diligently and frequently, and that he was thereby instrumental and influential in inducing Hanna to a favorable decision. But this could be true of all competing agents with whom an owner has listed his land. If the owner were to become liable for a commission because of such influence and assistance, he would become doubly and trebly liable to every agent that had made an effort to sell to the particular customer. We think, therefore, that there was no error in the noted instructions of the court on the question of burden of proof. Other specific objections are made to other instructions, but the views already expressed dispose of them all adversely to the appellant.

II.   Special complaint is directed to one instruction, which

is based upon a picturesque illustration of a fisherman and a fish. In view of our conclusion announced in the foregoing discussion, we might properly pass this point as necessarily nonprejudicial, were it not for the emphasis of the complaint and the rather unconventional character of the instruction. It is claimed, in effect, that the illustration used was fatal to the plaintiff, in that it laid before the minds of the jury the fascination of an appealing picture, and led them away from the sober judgment essential to a proper consideration of the case. The instruction was *sui generis*, and is not to be found in any of the recognized publications of "Instructions To Juries." In substance and in inference, it was that a fisherman caught a fish, and laid it on dry land; that another fisherman had angled for the same fish, and had perhaps drawn him above the water, where he could identify him, only to see him return to his native heath; that he had presumably expended upon him much time and bait. The question which naturally protruded itself out of this picture was unfortunately like unto that of the Sadducees: In the resurrection, whose fish shall he be? (Mark 12:23.)

2. TRIAL: instructions: employing figures of speech.

The trial was had at Humboldt, on the Des Moines River, near the fishing grounds of judge, jurors, and litigants. Perhaps we ought to assume, therefore, that the illustration took on some local or personal color in the minds of the jurors. But the record does not disclose that the learned trial judge purported to draw on personal experience, actual or imaginary; nor does it appear that his experience or reputation as an angler, if any he had, was projected into the scene. We recognize the delicacy of the subject thus injected into the trial, and the general distrust usually engendered by it. The story had in it potential peril for *both* litigants, and for the author. A "fish story" is often deemed a cloud upon good reputation. The credibility of it is usually aided by no presumption.

The fact remains that, from time immemorial, one of the functions of fishes has been to furnish parables for men. Granted that integrity reels and that veracity perishes when an angler delineates his catch and the dimension thereof, yet out of all the piscatorial fabrication of the ages there has abided a certain phosphorescent residuum which serves, in adept hands,

as a lamp of illustration to lighten the hiding places of real truth and of sound reason. Hence the parables of the fishes and the fishermen.

We are constrained to say that the parable under consideration, unconventional though it was, performed a legitimate function in this case. It was fatal to plaintiff only in the sense that it shed its light upon the real defect in his case.

For the reasons indicated in the first division hereof, the judgment below must be and is—*Affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.