LUELLA MARTIN, Appellee, v. GEORGE N. FRAZIER, Appellant.

**BOUNDARIES:** Calls of Deeds—Acreage—Monuments—Relative Value. Monuments, stated in a deed as the boundary line, even though obliterated, if capable of being identified, will prevail over a statement of the acreage conveyed.

*Appeal from Harrison District Court.*—HON. THOMAS ARTHUR, Judge.

THURSDAY, APRIL 8, 1915.

REHEARING DENIED TUESDAY, OCTOBER 5, 1915.

SUIT in equity to quiet plaintiff's title to a tract of land in Harrison county; to ascertain and fix the boundaries of adjoining tracts owned by plaintiff and defendant; and to recover damages for defendant's trespass upon lands claimed by plaintiff. The trial court gave plaintiff a decree as prayed, and rendered judgment against the defendant for $10 damages and costs, and defendant appeals.—*Affirmed.*

*Roadifer & Roadifer* and *C. A. Bolter,* for appellant.

*Cochran & Barrett,* for appellee.

DEEMER, C. J.—I. The parties to this suit are owners of adjoining tracts of land, the boundaries of which are very irregular and are the subject of this controversy. The entire body of the land, being in section 6 of a given township, was originally surveyed as a lot known as lot 8, section 6, in the township described, and was supposed to contain about 39 acres. A part of this lot was purchased by plaintiff and the following are the descriptions in her title deeds. In the deed from John Frazier to her father, the description was:

"A plat containing 12 acres more or less, situated in Lot 8, Section 6, Township 78, Range 43. Beginning at a point 32 rods from the northwest corner of Lot 8, thence running southeast following the center of the Boyer bed striking the east line of lot 8 at a point 5 rods from the southeast corner of Lot 8, thence running north to the northeast corner of Lot 8, then 48 rods west to the point of beginning."

And in the deed directly to her, this was the description:

"Beginning at a point in the old original Boyer river bed 32 rods east of the northwest corner of lot 8, thence following the center line of said old river bed southeasterly to a point 5 rods north of the southeast corner of Lot 8, thence north to the northeast corner of Lot 8 thence west to the place of beginning."

John Frazier was the owner of the remainder of the lot at the time of his death, and after his decease, his heirs conveyed the same to defendant by the following description:

"Lot 8, except the following tract conveyed to Bates Branson, February 4, 1880, beginning at a point 32 rods east of the northwest corner of said lot, thence running southeasterly, following the center of the Boyer river, striking the east line of said lot 5 rods from the southeast corner of Lot 8, thence north to the northeast corner of Lot 8, thence west 48 rods to place of beginning."

Bates Branson, referred to in this deed, was the father of plaintiff, to whom he, Branson, conveyed the tract described as 12 acres more or less. At no time within the memory of living witnesses did the Boyer river run through this lot at the place indicated by these descriptions; but plaintiff introduced testimony to show that the descriptions were made with reference to an old Boyer river bed, which gave evidence

that at one time the river ran in a southeasterly direction through the tract, as shown on the plat hereto attached.

A fence along what is shown to be the old river bed was maintained by Branson and the elder Frazier and by their successors in interest for many years; but some time in October of the year 1912, defendant entered upon that part of the land lying east of what is called the old river bed, and erected a fence running diagonally in a southeasterly direc-

tion, as shown by the plat. This action was then commenced by plaintiff to quiet her title to all the land lying north and east of what is claimed as the old bed in said Lot 8. She claims that she was and is the absolute and unqualified owner of all of it in virtue of her deeds and of certain mesne conveyances running back to one made by defendant's father, when he owned the entire lot, to plaintiff's father. She also alleged that the old Boyer river bed is the true western and southern boundary of her land; and that, whether this be true or not, both Branson and his grantees and the elder Frazier and his grantees have always regarded this old river bed as the boundary, have maintained a fence or fences therein as being the true line, and have acquiesced therein for more than ten years; and that Branson and his grantees have always claimed the land as theirs under their deeds, and are entitled to have the title decreed in them by reason of adverse possession. She also alleged that defendant had trespassed upon her land and damaged it to the extent of $300. She asked that the old river bed be established as the boundary; that title be quieted in her to the entire strip north and east of the river bed; and that she have judgment for damages and costs.

The defendant denied that plaintiff owned more than 12 acres in the northeast corner of the lot; denied acquiescence in any boundary line; and also denied that plaintiff had obtained title by adverse possession.

These were the issues upon which the case was tried, and the trial court established the boundaries claimed by plaintiff and awarded a small sum as damages.

II. If plaintiff's case depended upon either adverse possession or acquiescence in a certain boundary line for ten years or more, we would be disposed to hold that she is not entitled to recover; and as it is, we have some difficulty in arriving at a satisfactory conclusion by reason of the uncertainty in the testimony as to just where the true boundary line between these tracts is. It is manifest, from the descrip-

tions used in all the deeds and the testimony adduced "pro and con," that, running somewhere through this lot, so as to leave a substantial body of land in the northeast corner thereof, there was at one time a river bed of the Boyer river; that this ran in a southeasterly direction, commencing on the north line of the lot either 32 rods east of the northwest corner or 48 rods west of the northeast corner, and that it left the land at the southeast corner 5 rods north of said southeast corner.

It is perfectly manifest that the west line of this tract was not a straight one, but that it followed the sinuosities of the old Boyer river bed. This much is apparent from the descriptions contained in the various deeds; and while plaintiff must recover upon the strength of her own title, it is manifest that defendant is not entitled to run his fence from the northwestern corner of the tract lying in the northeast corner of the lot in a straight line southeasterly to the point 5 rods north of the southeast corner of the lot, unless it should appear that there never was a river bed at or near the place mentioned in the descriptions contained in the deeds, to which the description might apply. The first question in the case is, what is the true line between these two tracts of land? If an old Boyer river bed can be found which substantially meets the calls in the conveyances, then it will be followed, no matter what the courses, distances, and acreage stated in the deed. Everything yields to established monuments, even though these monuments be obliterated. *Richardson v. Sketchly,* 150 Iowa 394; *Garstang v. City of Davenport,* 90 Iowa 359.

BOUNDARIES: calls of deeds: acreage: monuments: relative value.

Plaintiff introduced testimony to show that there was an old river bed which approximately answers the calls in the deeds, which was known to the old settlers and recognized by them for more than 40 years. This has been more or less obliterated, especially at the southeasterly end thereof, where the land is low and flat and where it would naturally fill up, but other parts of it were quite distinct; and while defendant

contends that there is evidence of other river beds lying north and east of the boundary line claimed by plaintiff, there is no continuity about them, and the line contended for by him would run over high and dry ground, upon or through which there has never been a watercourse. There was, it is true, evidence of some other old bed or beds west and south. This is shown by the plat, attached, introduced by defendant.

Manifestly, none of the river beds here shown can be the ones referred to in the various deeds. A fence was main-

tained for many years along the course of this old river bed, but on account of the nature of the agreements between the parties with reference thereto, we do not think this fact alone is controlling; for, as already indicated, if the case rested upon adverse possession, or acquiescence in a given boundary as distinct from the true boundary of the tract, we think the plaintiff would fail. But the fence was so placed and maintained as to follow what appeared to be the old bed of a river for nearly its entire distance, and this old bed is the only one which could have been referred to and used as a boundary line in the deeds which were executed.

Until the true line is ascertained, no question of acquiescence or adverse possession arises, and if the land claimed by plaintiff is that which is described in her deeds, she has no occasion to rely upon the doctrine of adverse possession or of acquiescence in a given boundary. Whilst the case is not wholly free from doubt, we are constrained to hold that the line claimed by plaintiff as the division one between the two tracts is the true one, and that the trial court did not err in so holding. Indeed, its conclusion, based upon the testimony of witnesses who were present before it, is in itself entitled to some weight, especially where the witnesses disagree as to some of the material facts, as they do in this case. We refer to the doctrine of adverse possession and acquiescence, simply for the purpose of saying that if the true boundary were found to be where defendant contends it should be, there is nothing in the record which would defeat him on the theory that he lost his land by acquiescence in another boundary, or by adverse possession. The most that can be said of the case is that the true line has been in dispute for many years, the fencing arrangements being merely permissive and for mutual accommodation, and the possession was not adverse. Moreover, the expert surveyors who have gone over the ground with the various descriptions in the deeds, field notes, etc., in hand, do not agree upon the true line, largely because the old river bed has in some places been entirely obliterated. The majority of these surveyors found the line about where plaintiff

claims it to be, and the case is strengthened by testimony of old residents who were acquainted and familiar with the old river bed when it was a bayou.

Defendant's contention that plaintiff agreed to a recent survey and is bound by the result thereof is without merit. The testimony does not show any such agreement on the part of the plaintiff or by anyone authorized to act for her. Whilst there is some doubt in our minds regarding the true location of this boundary line, the one fixed by the trial court seems to have support in the evidence, and we do not see how, under the testimony, another could be established which would recognize all the calls of the various deeds. It is true that the one we approve does not answer all of them; but it answers more that any other suggested line, and, giving to the finding of the trial court such weight as it should have under disputed facts, we are constrained to hold that the decree is correct and it is—*Affirmed*.

EVANS, PRESTON and SALINGER, JJ., concur.