J. CLIFFORD ALLELY et ux., appellees, v. WARD L. FICKEL, appellant.

No. 47941.

(Reported in 49 N.W. 2d 544)

OCTOBER 16, 1951.

REHEARING DENIED DECEMBER 14, 1951.

Gillilland & Thomas, of Glenwood, for appellant.

Cook & Drake, of Glenwood, for appellees.

WENNERSTRUM, J.—Plaintiffs sought to enjoin the maintenance of a levee built by defendant on his land and parallel to a small stream and in connection therewith asked for a mandatory writ which would require its removal. It is plaintiffs' contention that the construction of the levee caused the damming up of floodwaters of the stream and the diverting of it onto plaintiffs' land, thereby causing damage to their property. The defendant maintained that the levee was erected in keeping with good conservation practices, with no intent to harm anyone, and asserted that the removal of it would cause damage to his property. The trial court enjoined the maintenance of the north 1000 feet of the levee and ordered that portion of it to be removed. The defendant has appealed and maintains that the decision of the trial court was not substantiated by the facts.

Mud Creek, the floodtime activities of which are the cause of this litigation, flows in a southerly direction, entering a forty-acre tract, most of which belongs to appellant, near its northwest corner. It then follows a circuitous course and leaves the tract near the southeast corner. A certain portion of this particular forty acres west and south of the creek belongs to one Sieck, who is not a party to this action. The appellees' land is to the west and south of the land belonging to the appellant. There is a branch of Mud Creek called Allely Branch which flows into it from the west and at about the middle of the west line of the forty acres to which we have previously referred. Ap-

pellant's buildings are located some distance to the south and east of the northeast corner of the forty acres in question. Appellees' buildings are located to the west and south of the middle of the west line of the forty acres and are near Allely Branch. Mud Creek has its source approximately seven miles north of the land in question and drains about thirteen square miles. The area which is involved in this litigation and owned by the parties here involved is partially covered with timber along the bank of the stream and during the growing season has a considerable overgrowth of weeds. The stream normally is about eight feet wide and one foot deep and has not been dry since 1942. The channel proper is 10 to 12 feet deep at places and about 16 feet wide. The lands generally along the creek proper are low and there is some slope up and away from the creek. This land overflows to varying degrees about once each year but can be cultivated except where there is timber along the banks of the stream. The overflowing apparently occurs where there are loops in the stream and in this particular area there are many such loops. There appears to be a variance in the testimony presented by the appellant and the appellees relative to whether, during a flood period, the water overflows first on the Allely land or on the Fickel land. There is some testimony of the overflowing of other portions of the Allely land which is south and east of the Fickel land and farther down the creek.

On June 14 and again on June 22, in 1947, there were two heavy rains resulting in the flooding of the area in question, as well as other lands in the vicinity. On these occasions Mud Creek left its bank near the mouth of the Allely Branch and flowed to the east across the Fickel land and up to and near the farm buildings. As a result of these floods during 1947, thirty-seven wagonloads of debris were cleared off of the Fickel property. In August, 1947, after consultation with certain employees of the Mills County Soils Conservation Service, Fickel, the appellant, constructed a levee on his property. It is three and one-half feet high, although the appellees claim that it is at least five feet high at some points. It is two feet high at the south end and is 1400 to 1485 feet long. The north end of the levee has a wing which extends northeasterly for approximately

60 feet where it connects with higher ground. This north end is approximately near the middle of the aforementioned forty acres. The levee has no wing at the south end and water could run around it at that point. This levee is approximately 250 feet from the creek at its north end, and by reason of loops in the stream its closest point to the creek is approximately 30 feet.

On or about May 8, 1950, there was another flood in the Mud Creek area and as a result of it the appellees claim a new channel was cut on their land one foot deep, 20 feet wide and 60 feet long. A previous flood had filled this particular area but the 1950 flood caused the cutting and the development of the channel last referred to. It is the appellant's contention that this last flood did not reach the levee at any point along the north 500 to 600 feet of it and did not follow the course of the flood of 1947. It is admitted that the water did reach this levee at a lower point and broke it at a point approximately 225 to 250 feet from the south end.

It is the appellees' contention that the levee diverted an unusual quantity of water onto their land and caused the washing of the soil, as previously referred to, resulting in damage to them. On the other hand, the appellant contends that the appellees have failed to carry their burden of proof and to show that they suffered irreparable damage such as would warrant the removal of the levee.

I. One of the appellant's grounds for reversal is the admission in evidence and its consideration by the trial court of a contour map offered by the appellees. It is appellant's claim that because of a failure on the part of the appellees to sufficiently, and in a detailed nature, prove the accuracy of the different elevations the map is inadmissible. It is contended that by reason of the claimed inaccuracies the testimony of the appellees' engineer is, in the main, a mere conclusion and does not merit consideration by the court. It is admitted in the appellant's written argument that certain of the contour lines have some degree of accuracy. However, it is his claim that the preparation of the map and the taking of the elevations were not entirely done by the identifying witness, the engineer; that his conclusions are based upon his personal observations, and that these conclusions relative to the spread of the water are

mere speculations and are not shown by any proper ground work or engineering data.

The basis on which the appellant makes his claim may be noted by the following portion of the cross-examination of the witness, Christensen, the appellees' engineer: "Q. Then you didn't make these measurements yourself * * *? A. They were made under my supervision. Q. Did you make them? A. They were made by men working for me."

The exhibit in question was used by the appellant in his examination of an engineer called by him, who, on cross-examination, testified: "Q. So at the cross section on Exhibit 2, your figures and Mr. Christensen's don't disagree, do they? A. Not very much. Q. Well, they are practically the same, aren't they? A. Practically the same."

In connection with the complaint made by the appellant it should be stated that the record shows that the survey, which was the basis of the contour map, was made in part by the witness, Christensen, that he was present at the time the various elevations were taken and participated in and supervised the obtaining of the necessary data.

Although the case of Prichard v. Board of Supervisors of Woodbury County, 150 Iowa 565, 576, 129 N.W. 970, 974, deals with the compliance with a statute, yet the statement in that case answers the complaint of the appellant in this case. It was therein stated:

"It is manifestly impossible for one man to make a survey such as was required in this case. He must, to some extent at least, depend upon the reports and actions of others who assist, and, having given general directions and gone over the ground setting stakes and actively assisting part of the time in the actual work of running levels, etc., we think a sufficient compliance with the statute is shown."

See also Lyon v. Board of Supervisors of Sac County, 155 Iowa 367, 375, 136 N.W. 324.

The comment of the annotator in 9 A.L.R.2d at page 1060 sets out what we believe is the manner in which plats and maps here involved should be considered. It is therein stated: "Ques-

tions of accuracy, of the possible bias or lack of knowledge of the person who made the plat or drawing, and of the effect of the paper upon the witness as leading, are open to opposing counsel in cross-examination and argument."

Consequently it is our conclusion that although the exhibit may have some minor inaccuracies, its correctness has been sufficiently shown by the evidence both on the part of the appellees and appellant to justify its consideration by the trial court.

And as further evidence of the admissibility of the map in question, the following is quoted from the statement in 9 A. L. R.2d at page 1089: "So liberal is the practice that any relevant map, by whomever made, may be presented to a witness familiar with the locality, and upon his affirmative answer to the question whether it is correct may be admitted in evidence."

II. The appellant maintains that the appellees have the burden of proving that the acts of the appellant in constructing the levee created a substantial diversion of water to the irreparable injury of the appellees. He cites the case of Black v. Escher, 186 Iowa 554, 561, 173 N.W. 50, 52, where it is stated, relative to the construction of a levee, as follows: "To warrant an injunction, there must be a substantial increase in the flow— another way of saying that there must be substantial injury."

See also Kellogg v. Hottman, 226 Iowa 1256, 1260, 286 N.W. 415.

It would unduly lengthen this opinion to summarize the evidence pertaining to the flow of the water on the respective properties at floodtime and its claimed resulting damage to the appellees. A detailed review of the evidence might indicate a variance in the testimony of the respective parties. It is apparent to us that part of this difference is due to testimony concerning different points on the stream and in the area involved.

There are certain fundamental rules of law which necessarily must be given consideration. In the case of Keck v. Venghause, 127 Iowa 529, 531, 103 N.W. 773, 4 Ann. Cas. 716, we stated:

"May a riparian proprietor embank against the natural overflow from an inland stream when the effect may be to cast an

increased volume of water upon the land of other proprietors, to their injury? Reason and justice should answer the question in the negative, and we believe that the weight of authority has so answered it."

And of particular application to the situation in the present case is the statement in Downey v. Phelps, 201 Iowa 826, 830, 208 N.W. 499, 501, where it is stated: "It has never been held that, in addition to the burden of natural drainage, the lower proprietor is required to receive the drainage diverted in his direction by artificial means or agencies, in the absence of circumstances estopping him to object thereto."

A factor which appears to this court to be of importance is that during the 1950 flooding of the area in question the waters reached a portion of the levee at least and, as a result thereof, a part of it was washed away. It appears to us that where the current of the water was swift enough to wash out a part of the levee, it must have been following a natural course of drainage, and a levee in this area would consequently divert waters at floodtime. There appears to be sufficient and controlling evidence to the effect that during the 1950 flood there was an increased flow of water onto the appellees' land of such force to substantially damage it by reason of the levee. This should not be permitted to continue. From a review of the evidence and the application of the authorities we have concluded that the trial court was justified in directing the issuance of a mandatory injunction for the removal of part of the levee.— Affirmed.

All JUSTICES concur.