VERNON W. PARIZEK, administrator of estate of Mary M. Ross, for the use and benefit of Leo J. Greazel et ux., appellee, v. FREDERICK KLEIN et ux., appellants, and RUDOLPH KINDL et al., nonappealing defendants.

No. 48613.

(Reported in 68 N.W.2d 299)

FEBRUARY 8, 1955

Arthur O. Leff, of Iowa City, for appellants.

Edward L. O'Connor, of Iowa City, for appellee.

SMITH, J.—This appeal really involves a boundary dispute between premises situated in and a part of Out Lot 8 in the east part of Iowa City, Iowa. The Out Lot is bounded on the west by Governor Street, on the south by Davenport Street, and on the east by Woods Addition. A 20-foot alley runs east and west through it and Woods Addition, parallel with and 150 feet north of Davenport Street. The premises involved here front on Davenport Street and extend north to the alley.

Out Lot 8 is one of a series of "out lots", originally lying along the east side of Iowa City. They were apparently assumed to be 430 feet long east and west. Out Lot 1 at the southeast corner of the original town was so marked.

The city engineer, a witness for plaintiff, testifies: "The east line of all the Out Lots was the section line * * * but [it] is not parallel to the last street that was laid out because there was a converging there, so they couldn't all be 430 feet." He also says Woods Addition was "laid out years ago when they probably had

better monuments than we have now." He says Woods Addition consists of five lots 60 feet wide fronting south on Davenport Street. And he assumes it is "all there" (300 feet east and west) and that the shortage caused by error in locating the section line must be charged against the Out Lots though "it might be true that the section line could have been farther east * * * and over in Woods Addition * * *. I assumed Woods Addition was correct and that its west line was the section line. That is the way it has been assumed for years and years."

The plats, prepared by this witness and offered by plaintiff, show the total length of Out Lot 8, along the north side of Davenport Street, as 368.5 feet, measuring from its southwest corner (at the northeast corner of the intersection of Governor and Davenport Streets) to a post he assumed to be at the southwest corner of Woods Addition.

He shows one pin 80 feet east, and another 70 feet farther east, of the southwest corner of the Out Lot. The latter marks the southwest corner of the premises of plaintiff's intestate, Mary M. Ross.

The assistant county engineer also testifies for plaintiff. His plat shows the southeast corner of the Klein premises as 144 feet west of the southeast corner of Out Lot 8 and 224.4 feet east of its southwest corner. That would make the Out Lot 368.4 feet long, a variance from the city engineer's measurement of only one tenth of a foot.

These measurements also agree in fixing the combined width of the Ross and Klein premises involved here as 74.4 feet.

The premises of plaintiff's intestate are immediately west of the property owned by defendants Frederick and Jessie Klein. Their titles both stem from a remote common grantor, Rachel L. Ross. It is suggested that she thought her premises were 80 feet wide east and west, whereas, as we have seen, they were only 74.4 or 74.5 feet. At least her children, after her death, assumed the width had been 80 feet.

The mistake probably grew out of language in the deed (1879) from Caleb Quaintance to Rachel's immediate grantor, Frederick Kramer, which recited: "The SW¼ of Out Lot 8, Iowa City, Iowa, South of alley, except 150 feet square in SW corner of said Out Lot extending to alley. Also commencing at

Southeast corner of said SW¼ of said Out Lot 8, thence North to alley, thence East 36 feet more or less to West line of lands sold by Jacob Bowman to Marshall Keyes, thence South to Davenport Street, thence West to beginning, the intent being to convey all the land *80 feet wide more or less* lying between the lands heretofore conveyed by me to D. D. Conrad and the lands conveyed from Bowman to Keyes." (Emphasis supplied.)

This description certainly did not cover "80 feet wide more or less." The last part of course describes a width of 36 feet, but its location and the width of the first described part would depend on the total dimension of east and west of the SW¼ of the Out Lot. There is error also apparent in the reference to "lands sold by Jacob Bowman to Marshall Keyes" since no such deed is shown. Fortunately we need not resolve these discrepancies.

However Kramer's deed to Rachel L. Ross (1881) purports to convey whatever Kramer received from Quaintance. And in 1903 Rachel conveyed to her son, Ernest H. Ross, "37 feet off the east side of the piece of ground which is described as follows: in the deed of Frederick Kramer to Rachel L. Ross * * * 'the SW¼ of Out Lot No. 8 * * * south of alley except 150 feet square in southwest corner of said Out Lot extending to alley. Also commencing at southeast corner of SW¼ of said Out Lot 8, thence North to alley, thence East 36 feet more or less to West line of land sold by Jacob Bowman to Marshall Keyes, thence South to Davenport Street, thence West to place of beginning * * *.' " We have inserted single quote marks to identify the quotation from the Kramer deed to Rachel. The deed from Rachel to Ernest is the foundation of the Klein title here. Plaintiff's intestate acquired only what Rachel retained after that deed was executed.

A plat might make the situation more understandable to the legal profession generally, but we trust the written descriptions will suffice for our purpose here.

The plaintiff prayed that title of his intestate be quieted in the premises described as follows:

"Commencing 150 feet East of the Southwest corner of Out Lot 8, Iowa City, Iowa, according to the recorded plat thereof; thence East 43 feet, more or less, to the West Line of the land sold

to Ernest H. Ross, by deed recorded in Book 90, page 353, Deed Records of Johnson County, Iowa; thence North 150 feet, more or less, to the South line of the alley running East and West through said Out Lot 8; thence West along the South line of the said alley to a point due North of place of beginning; thence South to beginning, all located in Iowa City, Johnson County, Iowa."

The trial court so decreed except that the claimed width of 43 feet was reduced to 41 feet. Only defendants Frederick and Jessie Klein appeal.

 I. Since the titles of both plaintiff's intestate and the Kleins are from a common source, we do not inquire as to the validity of Rachel Ross's title nor as to the actual width of her premises when she executed to her son, Ernest H. Ross, the deed from which the Klein title stems. It is clear the descriptions in the deed to Rachel, as recorded, did not show all the land intended to be conveyed. The deeds from Quaintance to Kramer and from Kramer to Rachel L. Ross were obviously intended to convey what remained after certain tracts had been sold off on both sides and erroneously assumed the width to be 80 feet. Subsequent surveys establish that only 76.4 feet remained.

The deed from Rachel to her son described "37 feet off the east side of the piece of ground which is described as follows: [repeating the language of the Kramer deed]." Ernest H. Ross subsequently conveyed to his wife, Minnie: "The East one foot of the SW¼ and the West 36 feet of the SE¼ of Out Lot 8" and in 1934 Minnie filed an "Affidavit of Possession and Homestead" using this later description. Subsequent conveyances down to and including the one to appealing defendants (Kleins) so described the premises. The conclusion is inescapable that Rachel L. Ross intended to and did convey to her son 37 feet in width off the east side of whatever she acquired by the Kramer deed. And defendants, through mesne conveyances, acquired title to the 37 feet she intended to convey to her son.

II. After Rachel L. Ross conveyed 37 feet in width off the east side of her property, what remained? We do not know what was in her mind on that subject, but after her death her children (other than her daughter, Mary M. Ross) quitclaimed to Mary

M. Ross, plaintiff's intestate, "commencing 150 feet east of the Southwest corner of Out Lot 8 * * *; *thence East 43 feet more or less* to the West line of the land sold to Ernest H. Ross * * *; thence North 150 feet more or less to the South line of the alley * * *; thence West along the South line of said alley to a point due North of place of beginning, thence South to beginning." (Emphasis supplied.) This deed must have assumed that Rachel had originally acquired 80 feet in width. The record here shows it could only have been 74.4 or 74.5 feet. The controversy here concerns its division between the Kleins (tracing their title back to her deed to her son, Ernest H. Ross), and plaintiff's intestate, Mary M. Ross, who acquired title, by will and quitclaim deed, to whatever remained after that deed was executed.

Plaintiff argues that "the Estate of Mary M. Ross, deceased, is entitled to 43/80 of this so-called 80-foot-wide tract and that appellant is entitled to 37/80 of it." In so far as this argument is based on the title record and its fair implications, it cannot be sustained. The deed to Ernest H. Ross upon which the Klein title rests of course took effect some years before the will. Those claiming under the latter would accordingly take only what remained, 37.4 feet, or at most 37.5 feet.

■ Where contending innocent parties derive title of adjoining tracts from a common grantor by successive mesne conveyances, and it develops there is a shortage, the one claiming under the common grantor's first deed is not required to contribute to the shortage. Ample authority, as well as reason, supports this almost self-evident proposition. Sorensen v. Mosbacher, 210 Iowa 156, 159, 230 N.W. 656; 11 C. J. S., Boundaries, section 60; Staley v. Richmond, 236 Ky. 11, 32 S.W.2d 546.

III. This proceeding, originally brought as a title suit, took on the additional aspect of a boundary-line dispute between plaintiff and the Kleins by plaintiff's amendment to petition in compliance with an order of court sustaining defendant Klein's motion for more specific statement.

The amendment to petition alleges that "the existing fence line is not the true boundary line between the properties" and that "the true boundary line is 2.5 feet farther east." They also plead: "Defendants unduly influenced Mary Ross [plaintiff's intestate] about a year before her death, into placing the fence

where it now stands; that the defendants got the decedent to put her fence back 2.5 feet on her own property under the questionable representation that by so doing she would improve the looks of her back lot than if she put the fence on the true boundary line between said properties."

The pleading then rehearses in detail the record history of the titles of the respective premises. We have already stated our conclusion as to the record title.

Plaintiff's original petition alleges adverse possession in himself "and his immediate grantors" and that defendants are estopped by "lapse of time and laches * * * and their failure to allege or assert any pretended claims to said premises."

We find no competent evidence to support the allegation of any undue influence by the Kleins upon Mary Ross inducing her to change the location of the fence between the premises. Attempt was made to show it by a reluctant witness produced by plaintiff. She was finally led to testify (over objection): "Q. What did she [plaintiff's intestate] say? A. Where she wanted to set the fence it would stick up like a sore thumb, and it was Mr. Klein's suggestion to put it with her house and her place would look better and so would his."

It is hardly necessary to point out the insufficiency of this testimony to show undue influence even if it was competent, which of course it was not. It could only be a self-serving declaration if designed to show undue influence.

IV. There remains plaintiff's claim of adverse possession and of estoppel because of defendants' "failure to allege or assert any pretended claims to said premises." This seems to refer to the alleged moving of the fence 2.5 feet from the claimed "true boundary", and involves only that area.

The trial court starts with a reference to "the well-established law of this state that when one claims a fence as the boundary line and the fence varies from the true line, the burden of proof is upon him who alleges it to prove his case by clear and satisfactory evidence." The proposition is not helpful here.

Plaintiff pleaded his intestate's property was "40 feet east and west." We have shown it was only 37.5 feet. Plaintiff also pleaded the fence now *existing* "is not on the true boundary line but is 2.5 feet west of the true boundary line." He in effect ar-

gues the fence was improperly moved from the *true* boundary line by decedent when she rebuilt it "about a year before her death."

Defendants contend that when the fence was rebuilt by Mary M. Ross there was no substantial change in its location. The practical result is that each relies on the old fence as being on the true boundary line but they disagree as to whether plaintiff's intestate materially changed its location.

It becomes then a mere question of fact. The burden of proof is of course upon plaintiff to support his allegation that the location of the fence was changed. It is undenied that decedent, Mary Ross, herself decided to put in a new fence and asked defendant Frederick Klein to pay half the expense. He agreed. "She bought the posts and the wire and got somebody to put it in, and I paid for half of it." This evidence is undenied and unobjected to.

Both Mr. and Mrs. Klein testify the new fence is in the same place as the old one—running from the northeast corner of the summer kitchen of the Ross house north along and just south of the shed at the back to the alley.

John Kindl was a witness for plaintiff. He painted the Ross house in 1946 and testifies: "There was another fence there at that time, located, I would say, about 2 to 3 feet east of the one that is there at the present time." His testimony in detail is not so clear: "The northern boundary of the old fence was the same as the new one that is in. There was no change in the north boundary. On the southern boundary, it jogged down from the north and cut off towards the northeast corner of the house. At the southern extremity the new fence is approximately 2 to 3 feet west from where the old fence line was." He concludes: "I am not certain for sure."

His cross-examination leaves the matter in even greater doubt. He says: "I couldn't say if the southeast end of the fence was stapled to the northeast edge of the house. * * * The south end of it was actually right at the northeast corner of the house after it veered over towards the house. It didn't bow out a little; it was straight down and then it cut over to the house just north of the cistern."

Mrs. Kindl, also plaintiff's witness, clearly says the old fence "was nailed on to the Mary Ross house, the back end of what she

had built for a washroom * * * and then it jogged out and down straight north. * * * I wouldn't try to set any date or anything, but I would say between 8 and 9 years. It was changed because it needed to be; it was bad."

Helen Smith, who has lived at the southwest corner of Out Lot 8 since the Kleins came to the neighborhood, says: "When the change was made with the new fence, I observed the Klein premises; the fence was in the same place." On cross-examination she repeats "the fence today is where it was when I first saw it."

Ray Gresher, who lives on the Houser premises next east of the Kleins, testifies the fence between the Ross and Klein properties has been located just about where it is now since 1946— from the corner of the building north to the alley. "The fence was rebuilt sometime after I was there in 1946. It appeared to be put in about the same place the old one was."

No useful purpose requires further discussion of the evidence. It clearly preponderates in favor of defendants. The trial court viewed the premises on his own motion. He seems to have been impressed with the fact that if the line be fixed according to the fence, the cement sidewalk along the south side of the Ross house would be on the Klein premises.

There is competent testimony Miss Ross understood this situation and was not disturbed by it. Her niece, Catherine Robertson, testifies: "On two or three occasions, she [Mary Ross] told me that if Mr. Klein wanted to he could stop her from using the sidewalk and cause her to go out the front door to go to the street." The testimony was objected to, but was competent here as an admission or statement against interest by plaintiff's intestate. 31 C. J. S., Evidence, section 218b.

It is to be remembered that her mother, Rachel L. Ross, who owned the entire tract, conveyed to her son, Mary's brother, the 37 feet now owned by the Kleins. It was a family affair and the premises all remained in the family until 1939. The questions of description and boundary line were probably not much considered, at least they were not very acute. As this same witness says: "Mary Ross's house and the Klein house were all on the same property. My grandmother, Rachel Ross, owned it at one

time and deeded enough ground to build the house that Ernest Ross lived in."

There is no indication that Rachel was ever deceived into thinking her original title was to an area 80 feet in width. It is just as reasonable to suppose she intended the 37 feet she deeded to her son to represent about half of the premises.

The descriptions in the deed from Quaintance to Kramer and in subsequent deeds in the chains of title are in hopeless confusion. But we are not required on this appeal to do more than to assume that the combined Ross and Klein tracts, as they lie, represent what Rachel actually owned. No one is claiming adversely to that proposition.

We conclude the decision of the trial court must be reversed and plaintiff's petition as against defendants Frederick and Jessie Klein must be dismissed. It is so ordered.—Reversed.

All JUSTICES concur.