BETTY KENNEDY, appellee, v. W. B. OLESON and WILLIAM OLESON, appellants.

No. 49899.

(Reported in 100 N.W.2d 894)

FEBRUARY 9, 1960.

420

Westfall, Laird & Burington, of Mason City, for appellants.

Mason & Stone, of Mason City, for appellee.

THORNTON, J.—The parties are the owners of adjoining lots on the south shore of Clear Lake. Plaintiff, Betty Kennedy, is the owner in fee simple of the following described property in Cerro Gordo County.

"Lot Two (2) in Block Two (2) in Patriarch's Militant I. O. O. F. Park as laid out and platted on Lot 1 in Lot 1, Section 22, Township 96 North, Range 22 West of the 5th P. M."

Defendant William Oleson is the owner of Lot One (1) in said addition. Lot One lies west of Lot Two. The boundary line between them is in controversy here. Plaintiff acquired title to Lot Two from her mother in 1934 and has paid taxes thereon since. Defendant William Oleson acquired title to Lot One on June 28, 1958, from his father, W. B. Oleson, the other defendant. W. B. Oleson acquired title October 5, 1950, from the executor of the estate of Charles H. Schechter. Schechter had owned Lot One for a number of years and in the 1920s built a cottage and garage on Lot One. From the time it was erected until moved by defendants in the spring of 1957 a corner or side of the garage encroached about a foot on plaintiff's property according to what will be referred to herein as the Bogardus line. There is a cottage on plaintiff's lot built in 1918 or 1920 and used as a family cottage since that time. Both parties occupy their cottages only in the summer months. The Kennedys have not used their cottage overnight since 1946.

In 1951 defendants employed one Mahone, a civil engineer and surveyor, to make a survey of the line between the two lots. Mr. Mahone is now residing out of Iowa. He did not testify and field notes and plats made by him were not offered in evidence.

Defendant William Oleson testifies Mr. Mahone placed two stakes, one visible in Exhibit D-1 near the middle of the lots from north to southeast of the addition built by defendants, and one shown in Exhibit D-2 near the north end of the lots not far from the high-water line. He also testified he thinks Mr. Mahone placed one upon the road. This last stake would presumably be at the southeast corner of Lot One.

In the spring of 1957 defendants moved the garage to the rear or south part of their lot and commenced to build an addition to their cottage. The addition consists of two rooms and bath and cost about $2500. Plaintiff claims this addition extends two feet 11 inches onto her lot. When plaintiff heard of the commencement of the work on this addition she had the boundary line between the lots surveyed by Mr. Bogardus, a professional engineer and surveyor. Mr. Bogardus was deceased at the time of the trial and his notes and plat were received in evidence over the objection of the defendants. The two surveys and other evidence will be discussed further in connection with the matters urged for reversal.

Defendants raise three propositions for reversal, first, that plaintiff failed to prove an encroachment by a preponderance of the evidence, second, acquiescence and adverse possession, and third, estoppel.

On the issues presented, plaintiff has the burden of proving the encroachment by a preponderance of the evidence. Defendants have the burden of proving their affirmative defenses, and such proof should be clear. Trimpl v. Meyer, 246 Iowa 1245, 1248, 71 N.W.2d 437, 438. Our review of this equity action is de novo.

I. In their first proposition defendants urge Exhibits P-1, P-2 and P-3 were inadmissible and the opinions of two witnesses based thereon were inadmissible. Exhibit P-1 is in three parts, it consists of a drawing or plat of the two lots in question, Lots One and Two and also Three, Four and Five in.Block Two, and Lots Five, Six and Seven in Block One, and two streets or drives. Dimensions, stakes found, and the location of one stake set are shown. At the top of the page is shown the words, "For Todd Kennedy. [Plaintiff's husband, who acted for her in all matters here.] Lot 2 Blk. 2 Patrarcks Militant I. O. O. F. Park." It is

dated, "4/3/57." Below the plat are the following notes: "Found original G. P. stakes on E. side Lot 2 & So. end Lot 3 & at N.W. cor. Lot 2 & E. end Lots 5 & 6 Blk. 1.—Found iron pin and checked at S.W. Cor. Lot 1, Blk. 2. Set G. P. at SW Cor. Lot 2." Below this is the following encircled by a penciled line: "Found iron pins set by Mahone on E. line Lot 1 which were set 40' due East of West line of Lot 1 which I consider in error."

Part two of Exhibit P-1 is a pencil drawing showing the boundary line between Lots One and Two, various measurements, the location of pins or stakes, one Mahone pin and its distance from the west line of Lot One, the addition to defendants' cottage and that it extended two feet 11 inches east of the boundary line.

Part three of Exhibit P-1 is a pencil drawing of Blocks One, Two, Three, Four, Five, and part of Ten in the subdivision. It also shows the waiver of notice and consent to the filing of the plat, the auditor's statement that the plat was filed under his direction and his acknowledgment taken by the clerk of the District Court. At the top of the page are words and figures as follows: "4116 Plat Aud. Cerro Gordo Co. to Public." and "Filed Oct. 18, 1915 Irene M. Bell Recorder."

Exhibit P-2 is a scale drawing made by the witness, Charles W. Newell, from the field notes of the deceased surveyor. Newell was a son-in-law and former employee of Bogardus. At the time of trial and for ten years previous he was employed as an engineering associate by the city of Mason City. This scale drawing is a composite of Exhibits P-1 and P-3 and conforms to Exhibit P-4, a photostatic copy of a plat of the subdivision from the Recorder's office.

Exhibit P-3 is a blueprint, identified as a plat of the east line of Lot One at the top of the page, and shows such line and the addition to defendants' cottage extending over the line onto plaintiff's lot a distance of two feet 11 inches.

Defendants contend Exhibits P-1 and P-3 are inadmissible because they are hearsay, contain conclusions of the deceased surveyor and do not come within section 622.42, Code of Iowa, 1958. In their reply brief defendants contend section 622.27 is a general statute, section 622.42 deals exclusively with field notes

and surveys and is applicable here and section 622.27 cannot be resorted to for matters in the special statute.

Plaintiff contends the Exhibits P-1 and P-3 are admissible under section 622.27 and as business entries made in the regular course of business, as an exception to the hearsay rule and as part of the res gestae. Section 622.27 provides:

"The entries and other writings of a person deceased, who was in a position to know the facts therein stated, made at or near the time of the transaction, are presumptive evidence of such facts, * * * when made in a professional capacity or in the ordinary course of professional conduct, * * *."

We do not find that section 622.27 has been construed by us on the writings or entries of an engineer or surveyor. However, see discussion in Cummins v. Pennsylvania Fire Ins. Co., 153 Iowa 579, 585, 134 N.W. 79, 82, 37 L. R. A., N. S., 1169, Ann. Cas. 1913E 235, and, as having some bearing, Allely v. Fickel, 243 Iowa 105, 108, 49 N.W.2d 544.

The testimony shows Ray Bogardus was a professional engineer and land surveyor; that he was deceased at the time of trial; he made the survey in the last part of March or first part of April 1957; his notes are dated April 3, 1957, and are in his own handwriting, except Exhibit P-3, a blueprint. Both exhibits are shown to be a part of his permanent records as an engineer and surveyor. Clearly the writings come within section 622.27 and we hold they are admissible in evidence under such section. They are presumptive evidence subject to contradiction by any proper method.

Whether coming under a similar statute or as an exception to the hearsay rule, as business entries or as part of the res gestae such evidence has been held admissible. Warczynski v. Barnycz, 208 Md. 222, 117 A.2d 573, 576; Wightman v. Campbell, 217 N. Y. 479, 112 N.E. 184, 185, Ann. Cas. 1917E 673; Jones on Evidence, Fifth Ed., Volume 2, section 272, page 526, section 290, page 552; Wigmore on Evidence, Third Ed., Volume 5, sections 1521–1527, pages 366–375, and sections 1563–1570, pages 421–428; Annotated Cases 1917E, page 675; 15 Ann. Cas., page 874; Clark, Surveying and Boundaries, Second Ed., section 234, n. 9, page 247.

■ The contention that section 622.27 is a general statute and controlled by section 622.42, a special statute, is without merit. Both statutes have as their purpose the introduction of evidence which was otherwise inadmissible. Both sections have been a part of our law since the Code of 1851 and appear in the same words today. Section 622.42 provides:

"A copy of the field notes of any surveyor, or a plat made by him and certified under oath as correct, may be received as evidence to show the shape or dimensions of a tract of land, or any other fact the ascertainment of which requires the exercise of scientific skill or calculation only."

This section deals with a copy of the survey or plat certified under oath as correct and provides the same shall be received as evidence to show certain things. There is nothing about the section to indicate it is the exclusive way to admit field notes or a plat. It deals with a small facet of evidence that was inadmissible as secondary evidence prior to its passage. It certainly does not prevent the introduction in evidence of a survey or plat upon the oral testimony of the surveyor. Section 622.27 deals with a small facet of evidence providing for the introduction of entries and other writing of persons deceased (a) against interest, (b) in a professional capacity, and (c) when enjoined by law, clearly providing an exception to the hearsay rule, and evidently passed in conjunction with our books of account statutes, sections 622.28, 622.29 and 622.30. Section 622.27 and section 622.42 do not deal with the same subject matter.

■ Defendants contend Exhibits P-1 and P-3 contain opinions and conclusions that make them inadmissible and the opinions of experts based thereon inadmissible. We think not. Perhaps a resurvey would always contain conclusions of the surveyor as to the original line but it is based upon experience and professional knowledge, and the actual location of the original line is a fact. Here the surveyor's notes refer to original gas pipe stakes. The evidence shows he was in a position to know this. He had been a surveyor for 50 years and was acquainted with the surveyor who laid out the original Auditor's Plat. His notes also show a pin referred to as the Mahone pin and states he considers it in error. This pin was discussed by the deceased surveyor with defendant William Oleson, plaintiff's

husband, and the surveyor's assistant at the time of the survey. And the notes show the distances between the lines found by the surveyor and a different distance for the Mahone pin. If this is an opinion and conclusion it is an apparent conclusion inherent in the facts of the location of the line and the Mahone pin. The basis of the conclusion is apparent and inheres in it. These are not such conclusions or opinions as will exclude the field notes or render inadmissible the opinion of a qualified expert based thereon. Hodges v. Sanderson, 213 Ala. 563, 105 So. 652; Allely v. Fickel, 243 Iowa 105, 49 N.W.2d 544; Wightman v. Campbell, 217 N. Y. 479, 112 N.E. 184; Warczynski v. Barnycz, 208 Md. 222, 117 A.2d 573; ,and In re Estate of Scanlan, 246 Iowa 52, 54, 67 N.W.2d 5, 6.

▮ Exhibit P-2 is admissible as illustrative of the testimony comprising the field notes, Exhibits P-1 and P-3, and Exhibit P-4. The trial court has discretion in the admitting of plats or diagrams for such purpose. Allely v. Fickel, 243 Iowa 105, 110, 49 N.W.2d 544, 546; and Note, 9 A. L. R.2d 1089.

II. Ralph H. Wallace, a civil engineer and licensed surveyor, testified for plaintiff. He testified both from Bogardus' field notes and his own personal observation there was an encroachment of defendants' cottage onto plaintiff's lot. He further testified he had compared the Mahone line with the Bogardus line and the differences in measuring. He had examined both surveys on behalf of defendants. However, it is not necessary for us to consider his testimony based on the examination of the Mahone survey.

▮ From the testimony of Mr. Wallace based on the Bogardus survey and his personal observations we are convinced the Bogardus line represents the true or original survey line. From an examination of Exhibits P-1, P-3 and P-4 we find the south line of both lots runs in a northwesterly and southeasterly direction, it does not run straight but is curved. The north line, the high-water mark of the lake, runs substantially the same and is curved. Exhibit P-4, the photostat from the Recorder's offices, shows the distance between the west line of Lot One and the east line on the south line, which line is the north line of Abbott Drive, to be 40 feet, and this line is curved as stated. Also the distance from the west line of Lot Two to the east line is shown

as 40 feet along Abbott Drive. This is true of the other five lots in Block Two. The west line of Lot One is shown as 125 feet. The east line, which is also the west line of Lot Two, is shown as 120 feet. The east line of Lot Two is shown as 110 feet. It is apparent the west and east lines of Lot One are less than 40 feet apart measured in a straight east-and-west direction.

The only evidence offered on behalf of defendants as to the location of the boundary line is the testimony of defendant William Oleson. Boiled down, his testimony on this issue is simply that his father employed a Mr. Mahone to make a survey of the boundary line. Mahone made a survey and set three stakes to indicate the boundary line, and in the opinion of the witness such line is east of the addition to defendants' cottage. There is no offer of any field notes or plat; no attempt to show the Mahone line was correct and no attempt made to show the Bogardus line was incorrect. We are compelled to believe there was an encroachment east of the true line to the extent of two feet 11 inches.

III. On the issue of acquiescence the evidence is a corner or side of the garage extended east about a foot over the true line. This garage remained in the same place from the time it was built until moved by the defendants in 1957. Defendants contend the boundary line should be established as a straight line no farther west than the most easterly line of the garage. We are unable to find any evidence in the record to show the parties ever recognized such a line as a boundary.

Defendants properly cite to us section 650.14, Code of Iowa, 1958. This section and section 650.6 are in the chapter relating to a special statutory proceeding to establish boundaries and provide for a plea and proof that a boundary has been recognized and acquiesced in for ten years and if it is so found such boundary shall be permanently established. These sections are declaratory of the law applicable here. Trimpl v. Meyer, 246 Iowa 1245, 1249, 71 N.W.2d 437, 439. The forerunner of these two sections first appeared in the Acts of the Fifteenth General Assembly, 1874, chapter 8, section 3, and provided in part, "* * * that have been recognized as such by the adjoining proprietors for over ten years." Since the Code of 1897, as now, the provi-

sion is, "* * * have been recognized and acquiesced in by the parties or their grantors for a period of ten consecutive years."

All of our cases on the question of acquiescence require the parties or their predecessors in title to recognize the line contended for as the boundary line. This may be by conduct, claims made or asserted, but it must be by both parties. It involves the claim or assertion by one party known to the other and failure to take any step to the contrary for the statutory period. Trimpl v. Meyer, supra; Petrus v. Chicago, R. I. & P. R. Co., 245 Iowa 222, 61 N.W.2d 439; Atkins v. Reagan, 244 Iowa 1387, 60 N.W.2d 790; Martin v. Frazier, 172 Iowa 63, 152 N.W. 14; Miller v. Mills County, 111 Iowa 654, 659, 82 N.W. 1038, 1040; and cases cited in each of the foregoing cases.

Here in addition to the evidence the garage remained in the same place (about a foot over the line) for over 25 years, we have the admission against interest made by defendants' deceased grantor, Mr. Schechter, in 1948, while he was the owner of Lot One, testified to by Mr. Oliver W. Ong, an owner of property in the immediate vicinity. He testified Mr. Schechter told him that he knew it was over the line a little ways and he would move it back any time they wanted it back. This testimony is competent. Parizek v. Klein, 246 Iowa 557, 565, 68 N.W.2d 299, 304. There was similar evidence testified to by plaintiff's husband, and suggestions of a quarrel between defendant W. B. Oleson and plaintiff's father relative to encroachment.

The above testimony is the only evidence offered bearing on occupancy of the land and the claims and use of the land prior to the acquisition of Lot One by the defendants in 1950. They had Mahone survey the line in 1951. Apparently defendants have claimed to the Mahone line since that time. In this state of the record there is only evidence of recognition of the true line by defendants' grantor, Schechter, and permissive use of the land in Lot Two occupied by the garage. This is not acquiescence. Even if we assume defendants claimed to a line no farther west than the most easterly point of the garage, the statutory period has not run.

IV. What has been said in Division III precludes us from finding title to the land west of the most easterly corner of the garage has been acquired by adverse possession. Defend-

ants' predecessor in title, Mr. Schechter, made no adverse claim and if defendants did, the ten-year period has not run. Evert v. Turner, 184 Iowa 1253, 1260, 169 N.W. 625, 627; Meyers v. Canutt, 242 Iowa 692, 696, 46 N.W.2d 72, 75, 24 A. L. R.2d 1; and Petrus v. Chicago, R. I. & P. R. Co., 245 Iowa 222, 229, 61 N.W.2d 439, 442.

V. Defendants claim plaintiff is estopped to deny the line formed by the east corner of the garage or by the Mahone line as the boundary line. Their position is plaintiff was under a duty to speak, she made no complaint about the location of the garage for a period of seven years while defendants owned Lot One; she made no complaint about the stakes set by Mahone or about a stone wall constructed so the east end thereof was within a few inches of the Mahone line for six years; and a substantial portion of the addition to defendants' cottage was completed before a protest was made by plaintiff's husband.

Our latest pronouncement upon estoppel in cases of this kind is found in Trimpl v. Meyer, supra, starting on page 1251 of 246 Iowa, and page 440 of 71 N.W.2d. A number of our authorities are there examined. The theory of estoppel as there expressed requires an owner who sees his neighbor in good faith assume a line to be a true line and act upon that assumption, and build valuable improvements to speak or he will be estopped. This statement precludes estoppel based on the stone wall or upon the Mahone line. The extension of the stone wall is not a valuable improvement and there is no evidence plaintiff was ever aware of the stakes set by Mahone.

The trial court found and we agree defendants did not claim to a line at the east corner of the garage but claimed to the Mahone line farther east, and if they did there is no showing plaintiff ever knew of such claim. This leaves for our consideration the question of the promptness of the protest on behalf of plaintiff after defendants started work on the addition to their cottage.

The evidence bearing on this issue shows plaintiff and her family did not occupy her cottage during the months of February, March and April of 1957. She lived in Mason City. In the last part of February plaintiff's husband employed Bogardus to make the survey. He was advised the survey could not be

made until the snow was off of the ground. He states he had the survey made because defendants started an addition and it was apparent to him it was over on their property. According to defendant William Oleson the work was started in the latter part of March with the moving of the garage about a week or ten days before the addition was started and it took 30 days or a little longer to complete the work. The evidence shows plaintiff's husband protested to defendant William Oleson at the time Mr. Bogardus and plaintiff's husband made a second trip to the property. At that time the work was not more than half completed. On the first trip made by Mr. Bogardus and plaintiff's husband to survey the property no one was there but at least the foundation had been laid. It was a matter of a few days between the first and second trips. At the time the protest was made there was a conversation between defendant William Oleson, plaintiff's husband and the surveyor concerning the boundary line and an offer by William Oleson to buy the property. Oleson then stopped the work to consult his attorney. After so doing he resumed the work and completed the addition upon the advice received. Under the circumstances presented we are unable to hold plaintiff was required to act with greater promptness. It would be impossible to know defendants' intention as to the location of the addition until definite steps were taken. When such definite steps were taken plaintiff, through her husband, had the line surveyed and protest was made. We reach the conclusion plaintiff was not estopped to claim to the true line. As sustaining our view plaintiff's protest was made promptly, see Herrick v. Moore, 185 Iowa 828, 169 N.W. 741.

Under the circumstances presented the order of the able trial court is affirmed, and defendants William Oleson and W. B. Oleson are ordered to remove the part of the addition to the building on said Lot One which extends and encroaches on plaintiff's said Lot Two within 90 days after the filing of this opinion.—Affirmed.

All JUSTICES concur except BLISS, J., who takes no part.