McCULLOCH INVESTMENT COMPANY, appellee, v. FRANK R. SPENCER et ux., appellants.

No. 48647.

(Reported in 67 N.W.2d 924)

434

JANUARY 12, 1955.

Walters, Bump & Jordan, of Des Moines, for appellants.

C. W. Harvey and George Cook, both of Des Moines, for appellee.

THOMPSON, J.—The plaintiff was at all times material a copartnership in the real-estate business in Polk County, with its principal place of business in Des Moines. The partnership and its members and agents concerned in this litigation were licensed real-estate brokers or salesmen. During the month of November 1952 plaintiff's agent Harry O. Huddleston contacted

the defendants in regard to the sale of their residence property at 3406 Rollins Street, Des Moines, and was given permission to show it to prospective purchasers, but was refused an exclusive listing. Whatever agency contract there was between plaintiff and defendants was entirely oral.

On December 7 Huddleston took Lee R. Carlson and Pearl C. Carlson, who were husband and wife, to look at defendants' property. A few days later the Carlsons submitted through Huddleston a written offer to purchase. This offer was promptly declined by defendants, and they at the same time refused to submit a counterproposition. It appears that no further attention was given to the matter by plaintiff or its agents. About January 4, 1953, a neighbor of the defendants who had a residence property in Des Moines which he wished to sell called the Carlsons, apparently at the suggestion of the defendants, to discover whether they would be interested in purchasing it. The location and perhaps other features of this property did not meet the Carlsons' requirements. Upon being advised of this, the neighbor told them that the defendants' property was still for sale. This led to a further call upon defendants by the Carlsons. At this time one Trickey, another Des Moines realtor with whom defendants had listed their property for sale, was at their home. Trickey took charge of the negotiations and shortly procured an offer satisfactory to defendants, and the sale was completed. The terms of the second Carlson offer were substantially different from those proposed through plaintiff's agency, although the principal amount was the same. Defendants paid Trickey a commission for making the sale. Plaintiff learned of this sale when it contacted the Carlsons with a view to selling them another property. Further facts will be set out later.

I. It is apparent the only question before us upon this appeal is whether plaintiff, through its agent Huddleston, was the efficient procuring or moving cause of the sale. At this point plaintiff says: " * * * since the court exercised the functions of the jury in deciding the questions of fact which were involved, the decision of the court is entitled to the weight of a jury verdict." It is true there was nothing involved in the case as it was tried but a demand for a money judgment; and ordi-

narily under such circumstances the court would have exercised the functions of the jury and we could interfere with its determination of fact questions only if there was no substantial evidence to support it. This is elementary.

But this rule does not prevail in the case at bar. The plaintiff brought its action in equity, and it was so tried. The petition is labeled "Petition in Equity." There was an attempt to plead equitable issues. These were removed from the case before the trial; but there was no motion to transfer to law, and it is clear the trial court considered the action as being still in equity. When objections to questions were interposed, the court took the answers subject to the objections, in accordance with general equity practice; and in its findings at the close of the case it said: "This action, although for a simple money judgment, was brought and tried in Equity by the parties." No exception to this finding was taken and no objection made to the procedure. We know of no rule which prohibits a law action being tried in equity if the parties so agree, and the court concurs, or which permits a litigant who has brought his action in equity and tried it throughout in that forum to urge upon appeal that it was in fact a law action and should be so considered. This court has held that upon appeal it will consider the case as being in the same forum in which it was tried below. Hess v. Hess, 191 Iowa 52, 54, 181 N.W. 760; In re Estate of Heaver, 168 Iowa 563, 567, 150 N.W. 698, 700; Steltzer v. Chicago, M. & St. P. R. Co., 167 Iowa 464, 466, 149 N.W. 501, 502; Wait v. Mystic Workers of the World, 140 Iowa 648, 650, 119 N.W. 72, 73. We consider the action as being in equity and so triable de novo in this court. This means that, while under some circumstances, particularly where the question of credibility of witnesses is concerned, we give some weight to the findings of the trial court on fact questions, we are not bound by them. In the case at bar there is little contradiction of the essential facts. The disputed matters arise chiefly through the inferences to be drawn from the various happenings; and here the determination of the trial court is entitled to much less weight.

Our numerous cases involving claims for real-estate commissions lay down certain rules of law. But since almost without exception our former holdings were concerned only with

the question of proper submission to juries, they aid us only as they establish rules of law which we should apply to the facts before us. We are here the triers of the facts and must determine where the weight of the evidence lies, and then apply the proper rules of law. The legal situation is not complex, and we regard the facts as controlling.

■■ The broker who attempts to collect his claim for a commission by legal process must show, in order to make a prima-facie case, these things: (1) the contract between himself and his alleged principal which evidences an agreement, express or implied, to pay him a commission for his services; (2) that he produced a purchaser who was ready, willing and able to buy on terms satisfactory to the vendor; and (3) that the purchaser was induced to enter into the negotiations and to make the purchase through the efforts of the broker as agent. Moore v. Griffith, 234 Iowa 1024, 1027, 14 N.W.2d 644, 645. The second and third requirements above set forth are to some extent similar and may be considered together for the purposes of the case at bar. One who produces a purchaser ready, willing and able to buy on terms satisfactory to the seller will generally be held to be the efficient moving cause of the sale, if one is made to the purchaser so produced.

In the instant case there is no question but that the plaintiff, through its agent Huddleston, first brought the defendants into contact with the eventual purchasers, the Carlsons. This occurred, however, through no original design on the part of Huddleston. When the defendants, after telling him he might show their property, refused to give him an exclusive listing, so far as the record shows he abandoned the project and gave it no further thought. The plaintiff advertised certain properties for sale, but defendants' was not among them. The broker Trickey was at the same time advertising defendants' property. The Carlsons saw both advertisements. They contacted the plaintiff-firm, and Huddleston took them out to show them certain properties. He did not show them defendants' property or mention it until, Carlsons having seen nothing that interested them, they asked him about the house at 3406 Rollins Street, of which they had learned through the Trickey advertisement.

Huddleston thereupon took them to inspect it, and a few days later presented defendants with a written offer from Carlsons, which was at once rejected. Huddleston says he did not think it was such an offer as defendants would accept, but he expected them to make a counterproposition. This they refused to do.

After this rejection, which occurred about December 14 or 15, plaintiff and its agents gave no more attention to the defendants' property. No further efforts were made to sell it. It appears the plaintiff was a member of the Multiple Listing Bureau, and the rules of this organization prohibited advertisement of properties not exclusively listed. It is evident that plaintiff's claim here must rest upon the fact that Huddleston first brought the defendants and the Carlsons—the ultimate purchasers—together. But it does not necessarily follow that plaintiff was the efficient procuring cause of the sale. Plaintiff did not procure from Carlsons an offer which defendants were willing to accept; that is, they did not procure a purchaser who was ready, willing and able to buy on terms satisfactory to the defendants.

As Judge Evans once said: "Granting that Tokheim first solicited Hanna as a purchaser * * * that fact did not give to Tokheim a lien or a proprietary interest in Hanna as a customer, although such is the assumption that often obtains in the minds of agents." Tokheim v. Miller, 194 Iowa 337, 341, 189 N.W. 790, 792.

The agent must do something more than introduce the parties. He must find a purchaser willing and able to buy on satisfactory terms. The plaintiff here had no apparent thought of showing defendants' house to the Carlsons until they asked Huddleston if he could do so. It was Trickey's advertisement which called the place to their attention. Having shown them the house and secured an offer which Huddleston himself did not think was a satisfactory one—it was on terms which would have required forty years to complete the payments—he abandoned the defendants and their property for some weeks, and became interested again only when it was learned through the Carlsons that it had been sold to them. This contact with the Carlsons was not for the purpose of getting a further offer or of

again interesting them in the defendants' house, but to attempt to show them other properties.

■■ Generally, if the broker has introduced a customer to the seller as a prospective buyer, the vendor may not defeat the right to a commission by dealing directly with the prospect so produced. But this is not so if there has been a good faith abandonment of negotiations. Kellogg v. Rhodes, 231 Iowa 1340, 1344, 4 N.W.2d 412, 414, and cases cited. Whether there has been an abandonment in fact and in good faith is generally a jury question. Morton v. Drichel, 237 Iowa 1209, 1213, 24 N.W.2d 812, 814.

■ Plaintiff here asserts the defendants were not in good faith in rejecting the Carlson offer and refusing to make a counteroffer and in selling to the Carlsons some weeks later when the latter, at the suggestion of a neighbor, reopened negotiations. We find the record facts do not support plaintiff's position. When the Spencers refused to make a counter-proposition, plaintiff's agent made no further effort to secure a better deal with the Carlsons. There seems, in fact, some basis for the defendants' suggestion that plaintiff devoted more effort to the Carlsons' interests than to defendants'. In any event, plaintiff evidently paid no further attention to the Spencer property. The reopening of the negotiations between defendants and the Carlsons seems to plaintiff to be a badge of fraud; but again we do not agree. So far as the record shows, the offer made by the Carlsons through the plaintiff was highly unsatisfactory. Defendants remembered the Carlsons only when a neighbor who had an East Des Moines property he wished to sell talked with them about it. They then gave him the names of the Carlsons as possible prospects. When the Carlsons advised him they were not interested in that location, he then told them the Spencer property was still unsold, and they got in touch with the defendants. This is the version given by the Carlsons; and it is uncontradicted. We see nothing inherently unbelievable in their testimony, and nothing that casts any implication of bad faith upon the defendants.

The facts here are quite similar to those in Floyd v. Misner, 183 Iowa 222, 166 N.W. 1046. There the plaintiff had taken one

Morrison to inspect defendant's farm, and had introduced him as a prospective purchaser. Morrison's proposition submitted at that time was rejected by the defendant. About one month later Morrison was taken to the farm by another agent and a sale was made. In the meantime plaintiff had not further contacted Morrison or made any effort to effect a sale to him. The trial court denied plaintiff's claim for a commission. It is true our holding was only that there were sufficient facts to support the finding of the lower court. The case was tried at law. Here we ourselves are the judges of the facts. We find them as did the trial court in Floyd v. Misner, supra. Plaintiff evidenced slight interest in defendants' property. It was necessary for the Carlsons to call attention to it and ask to be shown the house in the first instance; and this was because their interest had been aroused by an advertisement of another realtor.

After the first showing and the rejection of an offer which plaintiff's agent himself did not consider satisfactory, no more thought or effort was given to the sale of defendants' realty. The Carlsons were not further contacted, nor were any other prospects solicited or taken to see the house. It happened that through the interposition of a neighbor of the defendants who started with the thought of selling a property of his own, the Carlsons and Spencers were again brought together and, through negotiations conducted by another realtor, the sale was consummated. Our conclusion is that the great weight of the evidence denies that plaintiff was the efficient moving or procuring cause of the sale finally made. Consequently it is not entitled to recover a commission from the defendants—Reversed.

All JUSTICES concur.