ORVILLE SCHAULAND et ux., appellees, v. RICHARD SCHMALTZ et al., appellants.

No. 50206.

(Reported in 107 N.W.2d 68)

JANUARY 11, 1961.

R. C. Petersen and R. K. Stohr, both of Muscatine, for appellants.

A. Wayne Eckhardt and Allbee & Allbee, all of Muscatine, for appellees.

THOMPSON, J.—The plaintiffs, who are husband and wife, own Lot 6 of Orange Street Addition to the city of Muscatine. Adjoining it on the north is Lot 5 of the same addition, title to which is in defendant Gremmell and which is sold to defendants Schmaltz, husband and wife, through an installment payment contract.

The controversy here concerns a strip about four and one-half feet wide lying along the boundary between the two lots. According to a survey made at the instance of defendant Grem-

mell this tract is a part of Lot 5 by proper measurements. But for many years there has existed along the north line of this strip, and so enclosing it as an apparent part of Lot 6, a hedge. Along a part of the line of the hedge, and likewise encroaching on Lot 5, plaintiffs' predecessors in title about 1920 erected a garage, which still stands. So both the hedge and the garage are approximately 4½ feet north of the true boundary line of the lots according to the plat.

Plaintiffs' petition alleged the correct boundary is the present line of the hedge and garage, pleading both acquiescence and estoppel. The petition also asked an injunction to prevent defendants trespassing on plaintiffs' property, and for general equitable relief. The trial court found the line to be established by acquiescence for the required period of ten years, and entered its decree for plaintiffs as to the boundary line. Defendants as propositions relied upon for reversal assert that plaintiffs have failed to establish the line as claimed by them by either acquiescence or estoppel, and the necessary elements of estoppel have not been proven.

I. A procedural question meets us at the outset. The plaintiffs say their action is a special proceeding under chapter 650, Code of 1958, and so triable as at law; from which they contend that the findings of fact of the trial court are binding on appeal, if they are supported by any substantial evidence. They cite Concannon v. Blackman, 232 Iowa 722, 723, 6 N.W.2d 116. But we think the situation here comes within the rule followed in Trimpl v. Meyer, 246 Iowa 1245, 1247, 1248, 71 N.W.2d 437, 438. There as here the plaintiffs asked an injunction, and we held the case was tried in equity and so triable de novo in the appellate court. McCulloch Investment Co. v. Spencer, 246 Iowa 433, 436, 67 N.W.2d 924, 926. This conclusion is strengthened in the instant case by the prayer for general equitable relief, and by the fact that the court did not rule on objections, so far as the record shows. We think the matter is triable de novo here.

II. The able trial court held that acquiescence in the boundary line as fixed by the hedge and the garage was shown by the evidence, and based its decision upon such finding. We

think there is support in the record for this ruling; but since another basis for the decree and judgment clearly appears, we do not set out the evidence making a case of acquiescence. We may affirm upon any ground shown in the record, even though not the one relied upon below. In re Will of Smith, 245 Iowa 38, 46, 60 N.W.2d 866, 871, and authorities cited.

III. We turn then to what is known as the rule of practical location in fixing boundaries. The record shows that from 1932 the title to both Lots 5 and 6 was held in common ownership by Dora Mohnssen and Carl L. Hagermeister, who had acquired their ownership by inheritance. This continued until Carl L. Hagermeister died intestate on November 23, 1945. He left surviving him his widow, Margaret Hagermeister, and his son, Carl R. Hagermeister. At all times material, and since about 1920 or shortly earlier, the hedge and garage were in their present location. On August 27, 1948, Dora Mohnssen, Margaret Hagermeister and Carl R. Hagermeister sold and conveyed Lot 6 to Mayme E. Otto, from whom in direct chain of title the plaintiffs now hold. Dora Mohnssen died on November 6, 1951, leaving a will which devised one third of Lot 5 to her husband, Bruno Mohnssen, and the remainder to her brother, Carl L. Hagermeister, who had predeceased her. So his interest went to his son, Carl R. Hagermeister. On December 28, 1953, Bruno Mohnssen, Margaret Hagermeister and Carl R. Hagermeister, the then holders of the legal title, sold and conveyed Lot 5 to defendant Olive Katherine Gremmell, who later sold it to defendants Schmaltz by an installment payment contract.

So it appears that from 1932 until the conveyance to Mayme E. Otto on August 27, 1948, both lots were in common ownership. The rule governing the situation here is thus stated in 11 C. J. S., Boundaries, section 77, page 651: "A practical location made by the common grantor of the division line between the tracts granted is binding on the grantees who take with reference to that boundary. The line established in that manner is presumably the line mentioned in the deed, and no lapse of time is necessary to establish such location, which does not rest on acquiescence in an erroneous boundary, but on the fact that the true location was made, and the conveyance in reference to it."

Here we have conveyances of the respective lots made by common grantors, with the division line apparently clearly marked. Not only was the line apparent, but there is evidence from a competent witness that at the time of the sale to Mayme E. Otto, Dora Mohnssen, one of the grantors, said to her that the hedge fence and the northerly side of the garage was the northerly boundary of Lot 6, the property Mrs. Otto was purchasing.

Other courts have applied the rule. In Maes v. Olmsted, 247 Mich. 180, 225 N.W. 583, 584, the Michigan Supreme Court quoted with approval, and followed, this language from Herse v. Mazza, 100 App. Div. 59, 91 N. Y. S. 778: "Where adjoining owners took their conveyances from a common grantor with reference to a boundary line he had located on the ground, the deeds describing the tracts as certain lots in a block, *the location was, irrespective of lapse of time, binding on the owners and those claiming under them.*" (Italics supplied.)

The principle was recognized and applied in McCall v. Owen, 212 Ark. 984, 208 S.W.2d 463, 464, in Thompson v. Bain, 28 Wash.2d 590, 183 P.2d 785, 786, and in Strom v. Arcorace, 27 Wash.2d 478, 178 P.2d 959, 961, in each of which cases the rule as laid down in 11 C. J. S., Boundaries, supra, was quoted and followed.

Our own case of Rowell v. Weinemann, 119 Iowa 256, 260, 93 N.W. 279, 280, 97 Am. St. Rep. 310, is in accord with this principle. There we said: "He [defendant] purchased his land from plaintiff; and at the time of his purchase plaintiff, through his agent, pointed out the lines of his land and told him just where the boundaries were. Leary purchased believing that these boundaries were correct, and plaintiff is clearly estopped from now insisting that they were and are incorrect * * *."

■ ■ This we think, shows the true basis for the rule. The grantors, and those in privity with them and claiming under them, after selling in accordance with a boundary line clearly evident on the land or pointed out by them, or both, as in the instant case, cannot afterward be heard to say that the line is different and the marked boundary incorrect. The principle of estoppel applies. In Trimpl v. Meyer, supra, at page

1254 of 246 Iowa, page 442 of 71 N.W.2d, we pointed out that certain Minnesota cases applying the doctrine of practical location say that it rests upon the principle of estoppel. While practical location was not in express terms pleaded or argued by the plaintiffs, they did plead and argue estoppel, which is sufficient to bring the rule of estoppel by practical location before us, if the facts in the record show it.

■ We have often said that when one has innocently invaded the right of another, thinking he is within his own property, and this invasion is known to the one whose right is invaded and he makes no protest but permits the invader to make substantial improvements upon the invaded ground, the principle of estoppel comes into play. McCartney v. Schuette, 243 Iowa 1358, 54 N.W.2d 462, Minear v. Keith Furnace Co., 213 Iowa 663, 239 N.W. 584, Herrick v. Moore, 185 Iowa 828, 169 N.W. 741, and other cases have so held. We see no difference in principle between these cases and the one before us, where a common grantor permits a purchaser to buy in reliance upon a clearly marked boundary line.

■ Somewhat in point upon the question of equitable estoppel is Miller v. Lawlor, 245 Iowa 1144, 66 N.W.2d 267, 48 A. L. R.2d 1058. We there said: "The doctrine of equitable estoppel is applicable whenever the representation or promise relied on has been made to induce action or is reasonably calculated to induce action." 245 Iowa 1153, 66 N.W.2d 272, 273.

The existence of the hedge and garage, apparently marking the boundary between Lots 5 and 6, was a "representation", "reasonably calculated to induce action."

The judgment of the trial court was right.—Affirmed.

All JUSTICES concur.