LEROY MAHRENHOLZ, appellant, v. ROBERT J. ALFF et al., appellees.

No. 50378.

JANUARY 9, 1962.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellant.

Porter & Heithoff, of Council Bluffs, for appellees Robert J. Alff, Dena A. Alff, Raymond Rudolph, and Joyce L. Rudolph.

Robert M. Dippel, of Council Bluffs, for appellee Pearl Busey.

GARFIELD, C. J.—Plaintiff, Leroy Mahrenholz, brought this suit in equity against defendants Mr. and Mrs. Alff, Mr. and Mrs. Rudolph and Mrs. Busey to establish the boundary on the line of a fence between plaintiff's and defendants' adjoining lots in the city of Council Bluffs. Following trial to the court relief was denied. Plaintiff has appealed.

In June 1946 plaintiff purchased on contract Lot 12, Block 15, in a certain addition in Council Bluffs. He and his wife have occupied one of the two dwellings on it as their home virtually all the time since August 1946. Lots 11 and 10, east of plaintiff's home, were then occupied by Jack Daugherty who was purchasing them on contract. In July 1952 defendants Alffs and Rudolphs acquired Daugherty's interest in Lots 11 and 10 and have occupied the property as their home since September 1, 1952. Defendant Mrs. Busey owns the legal title to 11 and 10. For convenience we refer to the Alffs and Rudolphs as defendants. Lot 11 has no dwelling upon it. The Alff dwelling is on Lot 10, east of 11. The Rudolphs are son-in-law and daughter of the Alffs.

The three lots face south on Avenue B. According to the plat each is 50 feet wide east and west by 120 feet long north and south. The main dwelling on Lot 12 where plaintiff and wife have lived faces Avenue B. A smaller house is to the north (rear). A sidewalk goes north from the sidewalk along Avenue B just east of the house plaintiff occupies. This sidewalk fills the space between the east side of plaintiff's dwelling and the east line of Lot 12 as platted. According to plaintiff's wife four or five inches of this sidewalk extends onto Lot 11 as platted. The sidewalks were built before plaintiff acquired Lot 12.

The fence plaintiff claims marks the boundary between Lots 12 and 11 is about eight feet east of the boundary line as platted and as located by a survey the Alffs had made June 26, 1958. Thus plaintiff claims a frontage on Avenue B of 58 feet rather than 50 and that defendants' frontage is 92 feet rather than 100. The fence was built of wood posts and wire fencing by Daugherty, defendants' predecessor as contract purchaser, in the fall of 1946, a few months after plaintiff acquired Lot 12. The south end of the fence is about 18 inches north of the sidewalk along Avenue B. Its north end is just south of the east and west alley adjoining the lots on the north.

After the fence was built plaintiff occupied the ground just west of it by filling it in so it was about a foot higher than the ground to the east and by sowing grass and planting flowers. In 1954 or 1955 plaintiff bought about 1000 used bricks and set them in sand to form a patio between his dwelling and the fence. Plaintiff mowed the grass west of the fence, defendants the grass east of it. Grass in the parking was likewise mowed to the fence line if it were extended. Plaintiff shoveled snow from the sidewalk on Avenue B west of the fence line and defendants shoveled east of such line.

In 1954 wind blew a branch from a tree standing about two feet west of the fence onto part of defendants' garden and also damaged a snow fence which runs along the north side of the sidewalk on Avenue B from the south end of the wire fence east to defendants' driveway. Defendants had an attorney write

plaintiff claiming pay for this damage. Mr. Alff testifies plaintiff agreed to pay the damage but did not do so.

Other evidence will be referred to later.

Plaintiff's petition alleges the wire fence has been established as the boundary by acquiescence and also that defendants are estopped to claim any interest in property west of it.

■■ I. Defendants suggest our review may not be de novo and the trial court's findings may have the force and effect of a jury verdict. We entertain no doubt our review in this and other equity cases is de novo. Rule 334, Rules of Civil Procedure. It is true a special statutory proceeding under chapter 650, Code, 1958, to have a disputed boundary established is not reviewable here de novo. The judgment in such a case has the effect of a jury verdict which will be affirmed if supported by substantial evidence. Code section 650.15; Trimpl v. Meyer, 246 Iowa 1245, 1247, 1248, 71 N.W.2d 437, 438, and citations. This is not such a proceeding. Ibid. See also Kennedy v. Oleson, 251 Iowa 418, 421, 100 N.W.2d 894, 896; Schauland v. Schmaltz, 252 Iowa 426, 428, 107 N.W.2d 68, 70.

Although our review is de novo we give weight to the trial court's decision.

■ II. Of course the burden of proof rests upon plaintiff. To establish by acquiescence or estoppel a boundary which varies from the true line the proof must be clear. Trimpl v. Meyer, supra, and citations; Kennedy v. Oleson, supra; Olson v. Clark, 252 Iowa 1133, 1136, 109 N.W.2d 441, 443.

■ III. The rule we have many times announced for establishing a boundary by acquiescence is that where two adjoining owners for ten years or more mutually acquiesce in a line, definitely marked by a fence or in some other manner as the dividing line between them, such line becomes the true boundary although a survey may show otherwise and neither party intended to claim more than called for by his deed. Olson v. Clark, supra, and citations.

■ Our decisions on the question require the parties or their predecessors in ownership to recognize as the boundary the line contended for. Such recognition may be by conduct or by claims asserted, but it must be by both parties. It involves a

claim by one party, known to the other, and failure by him to take any step to the contrary for the statutory period. Kennedy v. Oleson, supra, 251 Iowa 418, 427, 100 N.W.2d 894, 899, and citations. See also Olson v. Clark, supra, 252 Iowa 1133, 1138, 109 N.W.2d 441, 444; Eggers v. Mitchem, 239 Iowa 1211, 1216, 34 N.W.2d 603, 606.

Acquiescence in the existence of a fence as a barrier, not as a boundary, is not such recognition as will establish it as the true line. Petrus v. Chicago, R. I. & P. R. Co., 245 Iowa 222, 228, 61 N.W.2d 439, 442, and citations.

IV. The issue of acquiescence presents mostly fact questions. We have referred to acts and conduct of plaintiff and defendants, as well as defendants' predecessor in ownership, which are evidence they acquiesced in the fence as the boundary between their properties. However, in view of other testimony we are not persuaded the trial court should be reversed.

As stated, the fence was not built until some months after plaintiff purchased Lot 12. Thus he could not have purchased in reliance on its marking the boundary. At the time plaintiff acquired Lot 12 and ever since then the true boundary, as platted and as shown by the survey the Alffs had made in June 1958, was at, or within six inches from, a jog in the width of the sidewalk along Avenue B at the front of these lots. West of this point the sidewalk in front of Lot 12 is from one to two feet narrower than it is to the east in front of Lots 11 and 10.

According to plaintiff there was an oral agreement regarding the fence between him and Daugherty at the time the latter erected it. This evidence is inconsistent with the thought the fence was put up to mark the boundary between Lots 12 and 11: "There was just an agreement between Jack and I verbally. There was no problem involving our kids in the neighborhood that I know of as being the reason for the fence. Mr. Daugherty had six or seven children. I had two boys at the time. I had a conversation with Mr. Daugherty about the fence when it was erected. There was a conversation about keeping the children in their respective yards at that time. *He put the fence up to keep his children in the yard there and he had this road grading*

*equipment.* He put it there for the winter and at that time he had a big tent, about 40 by 20 feet, and he used that to overhaul his equipment in the wintertime there."

Plaintiff also says that to his knowledge Daugherty never had a survey made before he put the fence up. Daugherty left Council Bluffs before the trial and did not testify.

It may be conceded a fence erected for a purpose other than to mark a boundary may later become such boundary if the adjoining owners acquiesce in it as such for the statutory period of ten years. However, the fact this fence was not built to mark the boundary, but under an oral agreement between the then adjoining owners that it was to serve other purposes is a circumstance favorable to defendants. See in this connection Eggers v. Mitchem, supra, 239 Iowa 1211, 1216, 34 N.W.2d 603, 606.

There is quite a little evidence that before the Alffs had Lots 11 and 10 surveyed in June 1958, plaintiff asked for such a survey because he planned to build a garage near his east line and wanted to know where to put it. Mr. and Mrs. Alff, Mrs. Rudolph and a young man who stayed with defendants all testify to one or more such conversations with plaintiff.

Mrs. Alff says plaintiff "had been at me different times. He wished we could get that place surveyed so he could build a garage. It wasn't one time, it was different times. * * * Whenever he would see us he would want a survey made so he could build a garage. I recall the conversation in June, 1958, before the survey was made. * * * The words he used were that he would like to have it surveyed so he would know where to put a garage. * * * I would say there were at least a dozen different occasions with plaintiff." The witness was not cross-examined on this subject.

There is also evidence that a Mr. Bartholomew, whose property adjoined defendants' on the east, asked Mr. Alff to have his lots surveyed because he thought defendants were encroaching upon Bartholomew's ground. The survey revealed, however, there was very little such encroachment.

No rebuttal testimony for plaintiff was offered. However, on cross-examination of plaintiff he earlier testifies, "I didn't make any kind of statement to the Alffs to the effect 'we should

have the lot surveyed so I can establish my boundary line.' I did not discuss the problem of the garage with the Alffs. * * * I never had any conversation with Mr. Alff about building my garage that I can remember. I do not remember making any statement to him about the possible survey to establish a boundary."

The weight of the evidence regarding plaintiff's asking for a survey of the disputed line so he would know where to locate his garage seems to be with defendants. It is apparent the testimony for them on this point is quite inconsistent with the claim the fence has been acquiesced in for the statutory period by the adjoining owners as the boundary between them. It seems doubtful plaintiff himself so regarded the fence a short time before this action was commenced July 7, 1958. See as somewhat in point Petrus v. Chicago, R. I. & P. R. Co., supra, 245 Iowa 222, 227, 61 N.W.2d 439, 441.

V. As stated, plaintiff also claims defendants are estopped to claim any interest in property west of the fence.

■ The theory of estoppel plaintiff invokes is that "where one has invaded the right of another, thinking he is within his own right, and that invasion is known to the other, and the other stands by and sees him make valuable improvements upon the invaded territory, under the supposition that it is a part of the possessions of the invader, equity will thereafter deny to the invaded the right to object to the invasion, * * *." Herrick v. Moore, 185 Iowa 828, 832, 833, 169 N.W. 741, 742; Hart v. Worthington, 238 Iowa 1205, 1220, 30 N.W.2d 306, 314; Trimpl v. Meyer, supra, 246 Iowa 1245, 1251, 71 N.W.2d 437, 440. See also Schauland v. Schmaltz, supra, 252 Iowa 426, 431, 107 N.W.2d 68, 71.

■ The doctrine of estoppel in cases of this kind comes near the rule of adverse possession although one may be estopped before the ten years essential to adverse possession expire. Citations last above; Minear v. Keith Furnace Co., 213 Iowa 663, 669, 239 N.W. 584, 586.

Trimpl v. Meyer, supra, quotes this with approval from 11 C. J. S., Boundaries, section 75, page 649: "Where no permanent or substantial improvements have been made, the doctrine

of estoppel cannot be invoked" (page 1252 of 246 Iowa, page 441 of 71 N.W.2d).

Of course the burden of proof on the issue of estoppel also rests on plaintiff. Trimpl v. Meyer, supra, and citation; Snieders v. Brantsen, 245 Iowa 81, 86, 60 N.W.2d 779, 781.

Plaintiff's claim of estoppel must rest largely on his building of the patio without protest from defendants. As stated, he purchased about 1000 used bricks and laid them on the ground in sand to form the patio. He testifies he did the work himself. How long he worked or how much the brick cost is not shown.

Division IV refers to evidence which at least makes it doubtful plaintiff believed the disputed ground belonged to him. If he had such belief no good reason is apparent why he would suggest to defendants a survey of the boundary. Snieders v. Brantsen, supra, 245 Iowa 81, 87–89, 60 N.W.2d 779, 782, 783. Further, it does not appear the patio was a valuable improvement as the term is used in this connection. Trimpl v. Meyer, supra, holds the building of a sidewalk and fence across a disputed area and putting a clothesline pole in it were not improvements of such nature or cost as to give rise to an estoppel.

The Trimpl opinion cites Harris v. Lewis, 156 Iowa 413, 415, 136 N.W. 674, 675, where an adjoining owner built a sidewalk along the front of a disputed strip eight or ten feet wide and, along the rear, cement curbing and a post to which wire was attached. It was held that since these improvements were not induced by anything said or done by the adjoining owner, were of small expense and might be readily removed without injury to the land, there was no estoppel.

Kennedy v. Oleson, supra, 251 Iowa 418, 428, 100 N.W.2d 894, 900, holds the extension of a stone wall was not a valuable improvement which would give rise to an estoppel.

In Hart v. Worthington, 238 Iowa 1205, 30 N.W.2d 306, cited by plaintiff on this issue, one adjoining owner built a garage and later added a coal house on the disputed ground. Further, that was a law action tried to the court without a jury and the question we had was whether substantial evidence sustained the trial court's holding there was an estoppel. As ex-

plained in Division I, this is a suit in equity we are required to review de novo.

In order that defendants may not profit from plaintiff's building the patio, plaintiff is given permission on or before May 1, 1962, if he so elects, to remove the bricks placed therein. He may also, if he chooses, remove on or before said date any flowers or bushes planted by him in the disputed ground. As so modified in these respects the decree is affirmed.—Modified and affirmed.

All JUSTICES concur except BLISS, J., not sitting, and PETERSON, J., who takes no part.