**Kenneth Joseph NOVOTNY, Plaintiff–Appellee,**

v.

**Ernest E. ROBBINS and Lois L. Robbins, Defendants– Appellants,**

**and**

**Bryon L. Wiscons and Sandra M. Miller, Defendants.**

No. 91–1196.

Court of Appeals of Iowa.

Aug. 27, 1992.

Jon M. Kinnamon and Walter McNamara, Cedar Rapids, for defendants-appellants.

Franklin R. York, Cedar Rapids, for plaintiff-appellee.

Considered by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SCHLEGEL, Judge.

The defendants, Ernest and Lois Robbins, appeal an action to quiet title. The district court ruled the plaintiff, Kenneth Novotny, proved a fence line was a boundary line and the Robbins had acquiesced to this boundary line for more than ten consecutive years. The Robbins contend the district court erred in finding Novotny achieved his burden of proving that the establishment of a fence and the circumstances surrounding its position and duration constituted a boundary line at the fence line and of demonstrating the Robbins's conduct constituted acquiescence to the fence line as a boundary line.

Kenneth Novotny owns a 100-acre farm just off Winslow Road north of Marion, Iowa. Novotny's parents owned the property from 1950 until 1964. When Novotny's parents purchased the property, there was a north-south fence starting on the northwest corner running south on what was believed to be the west boundary of their farm. Novotny and his father replaced the fence sometime between 1953 and 1958. Novotny bought the farm in 1964 from his mother and took a deed to the property in November 1971.

In the mid 1960s Rolling Glen Acres, a residential development, was platted immediately to the west of Novotny's property. Lots eight and nine of Rolling Glen Acres were located immediately adjacent to Novotny's farm. The plat surveyor had earlier determined the boundary fence did not coincide precisely with the east line of the quarter section. The boundary fence, however, was not disturbed during the plat proceeding, and Novotny was not told the fence did not fall directly on the quarter section line. Novotny continued to farm the land east of the fence.

Ernest and Lois Robbins are the current owners of lot eight in Rolling Glen Acres. Bryon Wiscons and Sandra Miller are the current owners of lot nine.

In 1988 Wiscons threw some weeds, grass and other items from a garden over the fence. Novotny asked Wiscons to remove the dumpings. Wiscons said, "I think I own that property." The parties did not reach an agreement, and Novotny eventually cleared the dumpings. Also, Robbins asked to dig a hole east of the fence which Novotny later filled.

In March of 1990 Wiscons and Robbins came to Novotny and told him they were going to move the fence to where it belongs. They took down the existing fence and put up a new fence.

On April 20, 1990, Novotny brought this action to quiet title to the strip of land immediately west of his property and on the east side of Rolling Glen acres. The disputed strip of property varied from 10.6 feet to 14.1 feet in width. Novotny claimed he acquired the strip of land either through adverse possession or through acquiescence.

During the trial, Novotny testified the fence which he and his father installed was in the same location as an older fence. The fence he helped to install in the 1950s remained in the same location, although not maintained after 1977. Novotny testified the fence was intended to be a western boundary as well as a barrier fence. Novotny stated he always believed either his father or he owned the land east of the fence. Novotny testified he farmed right up to the fence.

Novotny testified different owners, including prior owners of lots eight and nine, have told him the fence was not the boundary line, but no one did anything about moving the fence. Mr. Robbins testified they first learned in the fall of 1989 the fence was west of the deed line. Wiscons testified he talked to neighbors to the west in October of 1986 and learned the property

line was east of the old fence. All of the defendants paid taxes on the disputed strip. Novotny testified he lost approximately one-tenth of an acre of tillable ground and did not produce as much crop as a result of the new fence.

Based upon these facts, on June 14, 1991, the district court concluded Novotny proved his claim to the strip of property by virtue of acquiescence. On June 18, 1991, Novotny filed a motion to amend or enlarge findings or conclusions pursuant to Iowa Rule of Civil Procedure 179(b). Novotny requested a more precise description of the real estate and an injunction requiring the defendants to remove the new fence and restore the original fence.

The Robbins filed a motion for new trial, asserting they had discovered material evidence. They also filed a resistance to the motion to amend.

On July 10, 1991, the district court overruled the Robbins's motion for a new trial. The district court stated if Novotny had a better description for the property, he should submit it. The district court sustained Novotny's request for an injunction requiring the defendants to remove the new fence, but overruled his request the old fence be restored.

On July 18, 1991, Novotny filed a supplement to his motion to amend which included a description of Novotny's property. On August 2, 1991, the Robbins filed a notice of appeal. Wiscons and Miller have not filed a notice of appeal. On August 7, 1991, the district court sustained Novotny's supplemental motion to amend.

The Robbins contend the district court erred in concluding Novotny proved the fence line constituted a boundary line to which the Robbins had acquiesced for more than ten consecutive years. Novotny responds the district court could have ruled in his favor under the theory of adverse possession which he argued at trial. The district court did not reach the issue of adverse possession as it found Novotny proved the boundary by acquiescence.

 In an action pleaded and tried in equity, our review is de novo. Iowa R.App.P. 4; *Schauland v. Schmaltz*, 252 Iowa 426, 428, 107 N.W.2d 68, 70 (1961). The burden is upon the party claiming a boundary line, other than as disclosed by a surveyor, to establish the requisite mutual acquiescence by clear proof. *Davis v. Hansen*, 224 N.W.2d 4, 6 (Iowa 1974). Having carefully considered the record, we conclude the plaintiff has proved acquiescence in the fence as a boundary.

A suit to establish title by acquiescence is contemplated by statute. Iowa Code section 650.6 (1991) provides:

> Either the plaintiff or defendant may, by proper plea, put in issue the fact that certain alleged boundaries or corners are the true ones, or that such have been recognized and acquiesced in by the parties or their grantors for a period of ten consecutive years, which issue may be tried ...

Iowa Code section 650.14 (1991) continues:

> If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established.

Several cases have construed these code sections. In *Sieck v. Anderson*, 231 Iowa 490, 497, 1 N.W.2d 647, 650 (1942), the court stated:

> Commencing with *Miller v. Mills County*, 111 Iowa 654, 82 N.W. 1038, this court has continuously held that where a line marking the boundary between adjoining owners is recognized as such for a period of ten years and has been acquiesced therein for that period, such line becomes the true boundary, notwithstanding it is not the line fixed by government survey. The cases recognizing and applying this rule are too numerous in this state to require citation.

*Sieck*, 1 N.W.2d at 650 (citing *Kotze v. Sullivan*, 210 Iowa 600, 604, 231 N.W. 339, 340 (1930)).

In *Sille v. Shaffer*, 297 N.W.2d 379, 381 (Iowa 1980), the court declared:

> The meaning of "acquiescence" under section 650.14 is well settled. It is the

mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them. Acquiescence exists when both parties acknowledge and treat the line as the boundary. When the acquiescence persists for ten years the line becomes the true boundary even though a survey may show otherwise and even though neither party intended to claim more than called for by his deed. *Pruhs v. Stanlake*, 253 Iowa 642, 645, 113 N.W.2d 300, 302 (1962).

In the present case, the Robbins contend Novotny did not prove mutual recognition that the fence constituted the boundary line between adjoining properties or that the Robbins acquiesced in such a view. More specifically, the Robbins argue they did not know until the fall of 1989 the fence line did not comport with the legal boundary. They claim this was their first knowledge of the true boundary line and of the true boundary line in relationship to the fence. They cite *Sille* to support the proposition that knowledge on the part of both parties is a condition precedent for the existence of acquiescence. They argue since they did not have knowledge of the location of the true boundary line until 1989, the requirement of knowledge on the part of both parties for a period of ten years or more has not been met.

The argument itself implies the Robbins believed the fence to be the boundary line from 1977, when they purchased lot eight, until 1989 when they discovered the true boundary line was elsewhere—twelve years later. More importantly, however, the court in *Sille* overtly stated, "it is sufficient knowledge if both parties are *aware of the fence* or other line and of the fact that both adjoining landowners are, for the required period, *treating it* as a boundary. Knowledge, in the sense required for acquiescence, does not encompass record ownership." *Sille*, 297 N.W.2d at 381 (emphasis added).

The record indicates both Novotny and the Robbins had been treating the fence line as the boundary for the required period. Between 1977, when the Robbins purchased their lot, and the fall of 1989, when the Robbins argue they first learned the legal boundary line location, the Robbins asked Novotny for permission to dig a hole on the east side of the fence. Ernest Robbins testified he called Novotny and asked permission to cross the fence and to locate the field tile so a neighbor could hook onto the tile. In addition, according to Novotny, Ernest Robbins inquired within this same period where the fence was supposed to be, and Novotny told him "right where it is"; Robbins did not challenge this reply until 1990.

Novotny has also been treating the fence as the boundary line for well over ten years. When his parents purchased the property in 1950, a north-south fence already existed beginning on the northwest corner running south on what was believed to be the west boundary of their farm. Novotny and his father tore down the existing fence and erected a new fence in the same location sometime between 1953 and 1958. This fence remained in place until 1990. Novotny testified the new fence was intended to be both a boundary and barrier fence. He stated he has always believed either his father or he owned the land east of the fence. The record indicates Novotny has farmed the land east of the fence continuously since he began farming with his father in 1953.

■ In addition, the predecessor owners of the Robbins's property acquiesced to the fence as a boundary line for more than ten years. "It is well settled that purchasers of property cannot question a boundary line acquiesced in by predecessors in title more than ten years." *Dart v. Thompson*, 261 Iowa 237, 241, 154 N.W.2d 82, 84 (1967). Novotny testified several different owners—including prior owners of lots eight and nine—have told him the fence was not on the boundary line, but no one ever did anything about moving the fence until 1990. The Edwards previously owned the Robbins's property between 1966 and 1969. At some point during this period Novotny and Edwards discussed moving the fence because it was not on the proper-

ty line. However, as the trial court points out, Edwards took no further action and allowed the fence to continue to exist in its prior location.

■ Finally, the Robbins argue they are entitled to the disputed property because they have paid the property taxes on the land since 1977. They cite *Petrus v. Chicago, R.I. & P.R. Co.*, 245 Iowa 222, 61 N.W.2d 439 (1953) to support the proposition that the payment of taxes is a proper consideration to defeat acquiescence. *Petrus* does not support this contention. *Petrus* mentions *Goulding v. Shonquist*, 159 Iowa 647, 141 N.W. 24 (1913) in which the court stated a circumstance considered in denying a claim of *adverse possession* was the fact the claimant had never paid taxes on the land involved, nor had he offered to do so (emphasis added). Neither case is applicable here.

We are in agreement with the findings and adjudication of the trial court. Because we find the claim of acquiescence to be dispositive of the present case, we decline consideration of the adverse possession claim.

AFFIRMED.