# IN THE COURT OF APPEALS OF IOWA

No. 14-1030
Filed May 6, 2015

**IN RE THE MATTER OF J.T.L.,**
**Alleged to be Seriously**
**Mentally Impaired,**

**J.T.L.,**
　　　　Respondent-Appellant.
_____

　　　　Appeal from the Iowa District Court for Des Moines County, John M. Wright, Judge.

　　　　The respondent appeals from the finding he is seriously mentally impaired.

**AFFIRMED.**

　　　　Alan N. Waples, Burlington, for appellant.

　　　　Thomas J. Miller, Attorney General, Gretchen Witte Kraemer, Assistant Attorney General, Patrick C. Jackson, County Attorney, and Amy Beavers, Assistant County Attorney, for appellee State.

　　　　Considered by Tabor, P.J., Bower, J., and Eisenhauer, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**EISENHAUER, S.J.**

The district court entered an order involuntarily hospitalizing J.T.L. after finding he is seriously mentally impaired.[1]   J.T.L.'s sole contention on appeal is the record lacks sufficient evidence he is a danger to himself or others to justify a finding of serious mental impairment.  We review his claim for correction of errors at law.  *See In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013).

The State has the burden of proving the allegations made in the application for involuntary commitment by clear and convincing evidence.  *Id.* This burden of proof "is less burdensome than evidence establishing proof beyond a reasonable doubt, but more burdensome than a preponderance of the evidence."  *Id.*   In other words, in order to justify involuntary commitment, there must be "no serious or substantial doubt" the subject of an involuntary commitment proceeding is seriously mentally impaired.  *Id.* (citation omitted).

> "Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
>      a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
>      b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
>      c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

---

[1] We note the involuntary commitment proceeding was dismissed by an order entered October 23, 2014, because J.T.L. relocated to Denver, Colorado.  However, we address the issue raised in this appeal because "a party who has been adjudicated seriously mentally impaired and involuntarily committed is presumed to suffer collateral consequences justifying appellate review."  *In re B.B.*, 826 N.W.2d 425, 429 (Iowa 2013).

Iowa Code § 229.1(17) (2013).

J.T.L. does not dispute he has a mental illness or lacks sufficient judgment to make responsible decisions regarding his treatment. He instead challenges the finding he is a danger to himself or others. Specifically, J.T.L. argues there is no evidence of a recent overt act showing he is a danger to himself or others. *See In re J.P.*, 574 N.W.2d 340, 344 (Iowa 1998) (noting this finding "requires a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger" and must therefore be evidenced by a "recent overt act, attempt or threat"). The district court's finding J.T.L. is a danger to himself or others is binding if supported by substantial evidence. *Id.* at 342. Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence. *Id.*

We find substantial evidence shows J.T.L. is a danger to himself or others. Dr. Prabhakar Pisipati, who evaluated J.T.L. upon his admission to the hospital, noted he was suffering from grandiose delusions, such as thinking he is a "superman" who can "beat the 'S out of anybody,'" and paranoid delusions involving the government. Dr. Rickey Wilson, who provided a physician's report of examination for the involuntary commitment proceeding, opined J.T.L. was likely to physically injure himself if he remained at liberty without treatment. Dr. Wilson noted J.T.L.'s delusions "impair his functioning to provide for shelter, employment or effective interaction. This leads to intense angry outbursts with threats to others." The most recent overt act evidencing the threat he presented was described by J.T.L.'s father in an affidavit. The day before the application

alleging serious mental impairment was filed, while driving with J.T.L. at a street intersection, J.T.L. "began to yell" and "scream at" his father before he "jumped out of the truck in traffic." J.T.L. "stood in the middle of [the road]" and "threatened to kill" his father. "Overt acts include behavior such as threats to kill." *In re B.T.G.*, 784 N.W.2d 792, 798 (Iowa 2010).

Concern was also expressed regarding J.T.L.'s ability to satisfy his needs for nourishment, clothing, essential medical care, or shelter.[2] J.T.L. had been homeless for several months while living in Jakarta, Indonesia, before authorities there hospitalized him and eventually returned him to the United States. Dr. Wilson opined J.T.L. was incapable of meeting his needs and was likely to suffer physical injury as a result because being "homeless could lead to exposure and endanger life." J.T.L. also informed Dr. Pisipati he had "been drinking alcohol, smoking pot, doing other illicit drugs like cocaine and crack and also opiate medications."

Because substantial evidence shows J.T.L. was a danger to himself or others, we affirm the finding he is seriously mentally impaired.

**AFFIRMED.**

---

[2] The district court found J.T.L. met the definition of seriously mentally impaired as set forth in paragraphs (a) and (b) of section 229.1(17). While the district court made no finding concerning paragraph (c) of section 229.1(17), we may affirm on any ground shown in the record, even though it was not relied upon below. *Schauland v. Schmaltz*, 107 N.W.2d 68, 70 (Iowa 1961).